# Richmond.

## MONTGOMERY v. COMMONWEALTH.

### FEBRUARY 7, 1901.

1. CRIMINAL LAW—*Trespasser—Right to Eject—Assault—Self-Defence.*—A land-owner may order a trespasser off, and, if he refuses to go, may use the proper force to expel him, but he has no right to commit a breach of the peace in the outset. If he assault the trespasser, the latter may defend himself so far as is necessary to prevent bodily harm to himself. In the case at bar, the landlord had leased his premises to a tenant, and had no right to order the prisoner off, and the latter, when violently assaulted, had the right to defend himself.
2. CRIMINAL LAW—*Assault—Self-Defence.*—A person violently assaulted, after warning his adversary off, has a right to pause to ascertain whether his assailant has heeded his warning or is still pursuing, and does not thereby lose his right of self-defence.

Error to a judgment rendered by the County Court of Rockbridge county on a prosecution for malicious assault.

*Reversed.*

The opinion states the case.

*Hugh A. White,* for the plaintiff in error.

*Attorney-General A. J. Montague,* for the Commonwealth.

PHLEGAR, J., delivered the opinion of the court.

Daniel Montgomery was indicted in the County Court for Rockbridge county for malicious cutting and wounding William E. Davidson, with intent to maim, disfigure, disable, and

kill, and was convicted and sentenced to four years' imprisonment in the penitentiary. This court, at its June term, 1900, set aside the judgment and verdict and awarded a new trial (98 Va. 840). The prisoner was again convicted, and a new trial was again awarded him by this court at its September term, 1900 (98 Va. 852). He has been convicted the third time, and sentenced to four years' imprisonment in the penitentiary. A writ of error was refused by the judge of the Circuit Court, and awarded by one of the judges of this court.

The two reversals were because of errors committed in instructing the jury. The case is now before us on the correctness of Instruction No. 9 asked for by the prisoner and refused by the court, and on the refusal of the County Court to set aside the verdict because contrary to the evidence.

The facts are substantially the same as on first and second trials, except that it now clearly appears that the difficulty occurred on premises which were in the possession of John Randolph, a tenant of W. E. Davidson, and that Davidson was cut with the corn-cutter with which he assaulted Montgomery, and which the latter got from him in some way. The instruction referred to is as follows:

" The court further instructs the jury that if they believe from the evidence that Davidson got down off his horse and started toward the prisoner, demanding the gun, and saying he would see about whether the prisoner would leave, this of itself was such a threat and demonstration on the part of Davidson as to warrant the prisoner in placing himself in a position to defend himself, and ward off the threatened assault, and if he jumped back with gun in hand, pointed and cocked at Davidson, and said, ' If you fool with me I will shoot you, damn you;' or said, ' Don't come here, for if you do I will shoot you, damn you;' and the prisoner added in quick succession the further words, ' I will shoot you.' These are not such threats on the part of the

prisoner as warranted Davidson in picking up a corn-cutter and proceeding to attack the prisoner, and if you believe he did so, then you must regard Davidson as the attacking party, and find the prisoner not guilty."

The theory of the instruction is that Davidson, by getting off of his horse, demanding the gun, and telling Montgomery he would see about his leaving when he got ready, made an unjustifiable assault upon him, which gave Montgomery the right to take measures for his defence; that by presenting the weapon, which was lawfully in his possession, as a menace to Davidson, with a distinct and fair warning that he would use it if he was further attacked, he did not give Davidson the right to arm himself with a deadly weapon, and with it to augment the dangers of the attack already begun.

That these conclusions are correct, we cannot doubt. Montgomery was on Randolph's premises, not on Davidson's, and the latter had no right to order him away. If he had been on Davidson's premises, the latter would have had the right to order him away, and if he refused to go, to use proper force to expel him; but that right did not authorize him to commit a breach of the peace in the outset. It is one thing to commit an assault and battery for the purpose of expelling a trespasser, and quite another thing to lay hands on him in a proper manner solely to expel him. In the one case, the trespasser has a right to strike in defence; in the other, his right and duty are to go. If Davidson had only intended to use the proper force, he had no right to demand the gun. It did not belong to him, and no improper use had been made, or was threatened to be made of it. No reasonable conclusion could be drawn from Davidson's acts and demand than that he intended to make an attack. Being in the wrong, his duty was to stop when warned that he would be shot. The warning did not put Montgomery in the wrong, but its disregard, the seizure of the corn-cutter, and the quick

and violent assault therewith entitled him to defend himself as far as necesary to prevent bodily harm to himself. The instruction would have so informed the jury, and should have been given.

The motion to set aside the verdict should have prevailed. The evidence shows that Davidson ordered Montgomery to leave premises which were not in his possession or under his control; that because Montgomery said he would go when he got ready, Davidson made an assault upon him, and a demand for Montgomery's property, which he would not have been justified in doing if Montgomery had been a trespasser on his possession; that Montgomery got up, warned Davidson that he would shoot him if he persisted, jumped back ten or twelve feet, was immediately set upon with great violence by a man armed with a dangerous weapon, was disarmed by his gun being discharged when knocked up by his adversary, and by its breaking in two from a lick which made bruises, but does not appear to have caused one moment's hesitation on Davidson's part, or to have lessened his ability to overcome Montgomery; that Montgomery, in the scuffle, got possession of the corn-cutter, gave Davidson one cut on the scalp about one and a half inches long, was pressed back thirty or forty yards, thrown to the ground and beaten by Davidson after he was down.

The witness, Randolph, testified that when Montgomery first jumped back "he stood," and it was urged that he then lost his right of defence by not continuing to retreat. We think not. The pause could only have been for a very small portion of time; for, in answer to the question, "How long was it from the time Davidson got off of his horse until they clinched?" Randolph replied: "It was very quick—shorter time than it takes you to ask it and me to answer it." After jumping back he would naturally pause for an instant. He had a right to pause and ascertain whether his adversary had heeded his warning and desisted, or was pursuing. It is useless to consume further time

on the facts of this case.    In neither of the records which have been in this court, nor in all combined, is there sufficient evidence to warrant the conviction of the prisoner.

The judgment must be reversed, the verdict set aside, and the case remanded to the County Court of Rockbridge for a new trial, if the court and prosecuting attorney consider that a better case can be made out.

*Reversed.*