Tuesday        9th

        March, 1999.



Jon Douglas Alexander,                          Appellant,

  against      Record No. 2136-97-3
              Circuit Court No. CR97000278-00

Commonwealth of Virginia,                       Appellee.


                    Upon a Rehearing En Banc

Before Chief Judge Fitzpatrick, Judges Benton, Coleman, Willis, Elder,
    Bray, Annunziata, Bumgardner, Lemons and Senior Judge Overton*



        On January 26, 1999 came the appellee, by counsel, and filed

a petition praying that the Court set aside the judgment rendered

herein on January 12, 1999, and grant a rehearing en banc thereof.

        On consideration whereof, the petition for rehearing en banc

is granted, the mandate entered herein on January 12, 1999 is stayed

pending the decision of the Court en banc, and the appeal is

reinstated on the docket of this Court.

        The parties shall file briefs in compliance with Rule 5A:35.

It is further ordered that the appellee shall file with the clerk of

this Court ten additional copies of the appendix previously filed in this case.

_____

*Judge Overton participated in the decision of this petition for rehearing en banc prior to the effective date of his retirement on January 31, 1999 and thereafter by his designation as senior judge pursuant to § 17.1-401, recodifying Code § 17-116.01:1.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

Present:  Judges Coleman, Bumgardner and Lemons
Argued at Salem, Virginia


JON DOUGLAS ALEXANDER
                                            OPINION BY
v.          Record No. 2136-97-3      JUDGE DONALD W. LEMONS
                                          JANUARY 12, 1999
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF ROCKBRIDGE COUNTY
                  George E. Honts, III, Judge

          Robert B. Armstrong for appellant.

          Donald E. Jeffrey, III, Assistant Attorney
          General (Mark L. Earley, Attorney General, on
          brief), for appellee.



     Jon Douglas Alexander was convicted by a jury of brandishing

a firearm, a violation of Code § 18.2-282.  On appeal, he

contends the trial court erred in refusing to instruct the jury

on his right to defend his personal property.  We agree and

reverse the conviction.

                        BACKGROUND

     On April 25, 1997, Michael T. Eustler, employed as a

repossessor of motor vehicles, arrived at the home of Jon Douglas

Alexander, appellant, in Rockbridge County, Virginia, to

repossess his car.  Alexander asked if he could remove his

"personal property" from inside the car, and Eustler agreed.

     Alexander testified that he had been partially disabled with

a muscular disorder for many years.  He stated that the vehicle

contained legal documents that pertained to his disability claim,

which had been pending for many years, as well as some "tools of

his profession."  Alexander testified that he related these facts to Eustler and that Eustler agreed to allow him to remove these items.  Alexander stated that Eustler then "jacked up" the vehicle while Alexander was partially seated in the car and demanded that Alexander provide him with the keys.

Alexander testified that he went into his house and returned with the keys, which he put on top of the car.  Alexander also brought with him an unloaded rifle, which he placed in a flowerbed near the vehicle.  Alexander stated that Eustler, wearing gloves, approached him in a "belligerent manner."  Alexander then retrieved the rifle because he feared for his personal safety and his property.  Alexander testified that he held the rifle at his side "until he believed that Eustler was intent upon assaulting him."  Then, Alexander raised the rifle to his shoulder.  Alexander stated that Eustler continued to advance toward him until he finally pointed the rifle at Eustler.  Alexander testified that Eustler retreated and drove away.  The police later recovered an unloaded rifle from Alexander's home.

Eustler testified that Alexander went into his house and returned carrying a rifle.  Eustler stated that Alexander opened the left rear door and began to remove items from the back seat. Eustler stated that when he approached the vehicle, Alexander raised the rifle and said, "I could drop you right there." Eustler testified that he returned to his truck, left the premises, and called the police.

JURY INSTRUCTION

Upon review of jury instructions given or refused at trial, an appellate court is charged with seeing that "the law has been clearly stated and the instructions cover all issues which the evidence fairly raises." Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988). The evidence relied on to support a proffered instruction must amount to "more than a scintilla." Morse v. Commonwealth, 17 Va. App. 627, 633, 440 S.E.2d 145, 149 (1994). "An instruction that is not supported by the evidence, however, is properly refused." Lea v. Commonwealth, 16 Va. App. 300, 304, 429 S.E.2d 477, 479-80 (1993).

However, "where credible evidence exists that would support giving the jury instruction, the trial court's failure to give the instruction constitutes reversible error." Hunt v. Commonwealth, 25 Va. App. 395, 400, 488 S.E.2d 672, 674 (1997). In addition, where there is evidence which "tends to sustain both the prosecution's and the defense's theory of the case, the trial judge is required to give requested instructions covering both theories." Diffendal v. Commonwealth, 8 Va. App. 417, 422, 382 S.E.2d 24, 26 (1989).

Only those arguments presented in the petition for appeal and granted by this Court will be considered on appeal. Rule 5A:12(c); see Cruz v. Commonwealth, 12 Va. App. 661, 664 n.1, 406 S.E.2d 406, 407 n.1 (1991). Because the trial judge gave an

instruction on self-defense, but refused any instruction on defense of property, Alexander has limited his appeal to the issue of whether the trial court erred in refusing to give an instruction on the use of reasonable force in defense of personal property.

The "right to possession of chattels may be exercised without recourse to the courts, provided this can be done peaceably.  It is only when a right of one is denied or resisted by another, that such party must resort to appropriate legal proceedings to enforce that right."  Wallace v. Chrysler Credit Corp., 743 F. Supp. 1228, 1233 (1990), see Code § 8.9-503.  Because a debtor possesses "[the] privilege to retain possession of his [secured] car," he may properly "force the defendant to use judicial methods of repossession."  Greene v. First National Exch. Bank of Va., 348 F. Supp. 672, 675 (1972).

Alexander agreed to the repossession of the car, conditioned upon his ability to remove his personal property.  Eustler was required either to allow Alexander to remove his personal property or to desist and advise the creditor that it must pursue appropriate judicial remedies.

"A man may use force to defend his real or personal property in his actual possession against one who endeavors to dispossess him without right. . . ."  State v. Trammel, 672 P.2d 652, 654 (N.M. 1983).  An individual may not, however, "use force to defend real or personal property where the attempt to

dispossess is lawful." Trammel, 672 P.2d at 654. Until his personal property was removed, Alexander objected to the repossession; for this reason, Eustler's attempt to dispossess Alexander of his property was "without right." Alexander was privileged to use reasonable force in defense of his personal property.

In evaluating the amount of force which may be asserted in defense of property, "[i]t is not reasonable to use deadly force to prevent threatened harm to property, such as a mere trespass or theft, even though the harm cannot otherwise be prevented . . . because the preservation of human life is more important to society than the protection of property." W. LaFave & A. Scott, Criminal Law § 55, at 399-400 (1972). However, "[a] threat to cause death or serious bodily injury, by the production of a weapon or otherwise, so long as the actor's purpose is limited to creating an apprehension that he will use deadly force if necessary, does not constitute deadly force." Model Penal Code § 3.11 Definitions (1974).

Alexander's sole attempt to defend his personal property consisted of obtaining an unloaded rifle from his home and displaying it to Eustler. Alexander cites Diffendal, 8 Va. App. 417, 382 S.E.2d 24, in support of his argument. Diffendal had arrived at a friend's farm to practice target shooting. Additionally, he had agreed to watch over the property while the owner was absent. Upon driving onto the property, Diffendal saw

an unfamiliar person with a holstered gun tucked into her pants. The residence on the property "contained numerous items of value which could be secreted on a person and carried away." Id. at 422, 382 S.E.2d at 26. Diffendal surprised the woman, who was a plainclothes police officer and escorted the officer to her vehicle, with his rifle "cradled in his arm." Id. at 420, 382 S.E.2d at 25. He was convicted of brandishing a firearm. He argued that because a jury could have found that he "reasonably believed her to be a trespasser who posed a threat to himself and [his friend's] property," the trial court erred in refusing to instruct the jury on the privilege to exercise reasonable force in defense of the property and himself. Id. at 420, 382 S.E.2d at 25. We agreed that the trial court erred in refusing his instruction and remanded the case to the trial court.[1]

Virginia has "long recognized the right of a landowner to order a trespasser to leave, and if the trespasser refuses to go, to employ proper force to expel him, provided no breach of the peace is committed in the outset." Pike v. Commonwealth, 24 Va. App. 373, 375-76, 482 S.E.2d 839, 840 (1997). The "breach of the peace in the outset" limitation originated in Montgomery v. Commonwealth, 99 Va. 833, 37 S.E. 841 (1901), a case cited by us in Pike. In Montgomery, the defendant ordered a trespasser off land in which the defendant did not have a possessory interest,

---

[1]Diffendal involved mixed questions of self-defense, resisting a trespass to real property, as well as defense of personal property.

and therefore he had "no right to order [the trespasser] away." Id. at 835, 37 S.E. at 842.  The "breach of the peace in the outset" involved aggressive conduct to expel a trespasser where no right to exercise such force existed.  By contrast, Alexander had the right to resist the repossession of his vehicle that contained his personal property.

Pike pointed a rifle at four utility workers in an attempt to expel them from his property and was convicted of four counts of brandishing a firearm.  On appeal, he challenged only the sufficiency of the evidence.  His conviction was affirmed upon our holding that the trial court "examined the underlying circumstances and concluded that the production of the shotgun, under circumstances of angry confrontation, was unreasonable in terms of any privilege that Pike may have had to defend his property."  Pike, 24 Va. App. at 376, 482 S.E.2d at 840.  In Pike's bench trial, had the court found that the production of the shotgun was reasonable under the circumstances, Pike would have been entitled to acquittal.

The court in Pike did not determine whether the presence of the utility workers on the property was "with right" or "without right."  Had they been on the property "with right," no force would have been reasonable to expel them.  Had they been on the property "without right," only reasonable force could have been utilized to expel them.  The trial court decided and we agreed that Pike's conduct under the best legal posture available to him

was nonetheless unreasonable and the conviction was affirmed.

Alexander objected to the self-help repossession remedy employed by Eustler until his personal property was removed from the vehicle.  Until the property was removed, the effort to repossess Alexander's vehicle was "without right."  Under these circumstances, Alexander was entitled to use reasonable force to defend against the repossession.  The use of deadly force to prevent threatened harm to property is never justified except in defense of habitation[2]; however, the threat of deadly force may be justified under certain circumstances.  There was a factual dispute as to whether the amount of force used by Alexander was reasonable.  In evaluating the defense of personal property, "[i]t is for the jury to determine whether the force used was reasonably necessary under the circumstances."  Charles E.

---

[2]The use of deadly force,

> in defense of "property" can also be justifiable, but the classic formulation lists only arson or burglary as crimes against property which can justify the use of deadly force. . . .  Even then the use of deadly force must have been necessary.
> Defense of habitation and justifiable self-defense overlap in the "castle doctrine" which states that one may, without retreating, use force, to include deadly force if necessary, to keep aggressors out of his own house.  This part of the castle doctrine is one aspect of defense of habitation. . . .  [T]he justification exists in the curtilage as well as the castle.

Roger D. Groot, Criminal Offenses and Defenses in Virginia 114 (3rd ed. 1994).  The defense of habitation and the castle doctrine have not been raised in this case.

Torcia, <u>Wharton's Criminal Law</u> § 191, at 455 (15th ed. 1994).
Here, the trial judge instructed the jury on the law of
self-defense.  He erred in failing to instruct the jury on the
law of defense of personal property.

Accordingly, the conviction is reversed and remanded for further proceedings if the Commonwealth should be so advised.

<u>Reversed and remanded.</u>

Bumgardner, J., dissenting.

Concluding that the trial court did not err in refusing an instruction on defending personal property, I dissent. I would affirm the conviction of brandishing a firearm.

The victim was entitled to repossess the defendant's car. Under no circumstances was it reasonable for this defendant to brandish a rifle to repel this repossession. Even if the victim had been a trespasser, the defendant was not entitled to assault him. "For a mere trespass upon land, the owner has no right to assault the trespasser with a deadly weapon . . . ." Montgomery v. Commonwealth, 98 Va. 840, 844, 36 S.E. 371, 373 (1900).

Pike v. Commonwealth, 24 Va. App. 373, 482 S.E.2d 839 (1997), controls this case. In Pike, the trial court concluded that the defendant acted unreasonably when he produced a shotgun to defend his land. This Court held "[t]he brandishing of the shotgun was disproportionate to any threat posed by the unarmed cable workers, irrespective of the legality of Cablevision's conduct." Id. at 376, 482 S.E.2d at 840.

The majority distinguishes between using deadly force, which it would not permit, and threatening to use deadly force, which it would permit. Applied to these facts, I do not feel the distinction is realistic, practical, or wise. Permitting one to threaten to use deadly force leads in dangerous progression to an unacceptable conclusion. Here, the victim would have been entitled to use deadly force to repel the perceived threat

- 13 -

arrayed against him by the defendant.  A person threatened with deadly force has the right to defend his person.  The victim had no way of knowing the gun was empty, and his right to use deadly force is determined as the situation appeared to him.  Once the victim defends with deadly force, the person who originally threatened deadly force becomes justified in responding to the victim's deadly force with his own deadly force.

I do not believe precedent allows brandishing a firearm to be lawful resistance to repossession of personal property. Therefore, I find the trial court properly refused the instruction that would have permitted such an unreasonable response to protect personal property.