## CIRCUIT COURT OF ROANOKE COUNTY

State Farm Fire
and Casualty Co.

v.

Leslie Elizabeth Thomas
and Shane A. Amburgey

November 3, 2003

Case No. CH01-628

BY JUDGE ROBERT P. DOHERTY, JR.

On February 21, 2003, this Court rendered an opinion that did not fully address the question presented by Plaintiff. Citing *State Farm Fire & Cas. Co. v. Mabry*, 255 Va. 286 (1998), Plaintiff now requests a reconsideration of the issues presented, which the Court grants. No additional evidence has been taken. The Court has instead re-reviewed the trial exhibits, the deposition transcript and evidence, its own notes of the trial testimony, and the previous arguments of counsel to arrive at its conclusion.

Plaintiff's Insured has been sued by his former girlfriend after she was seriously injured when the Insured forcibly removed her from his residence. She has alleged both an intentional and a negligent tort. Plaintiff insurance company asks the Court to declare that the actions of its Insured in causing injury to his former girlfriend were intentional rather than negligent. Such a declaration would, under the terms of the insurance policy, eliminate the Insured's coverage in the underlying tort action.

The evidence is that, after an altercation at a bar, where both parties had been drinking, the Insured's former girlfriend was asked to leave by the management. Later that night, she telephoned the Insured from her

neighboring residence and advised him that she would immediately return the key to his condominium. A short time later the Insured heard the key strike and ricochet off his front door. When he was unable to locate the key, he telephoned his former girlfriend to ask where she had thrown it. In response, she volunteered to come over to help locate it. After the key was found, the former girlfriend walked into the Insured's condominium without an invitation. Her deposition testimony and a narrative she gave to an insurance investigator contain conflicting statements regarding whether she was told by Insured not to enter his residence and/or to leave his residence. She further testified that, when she did not leave, the Insured pushed her out the door and off the porch, causing her to suffer serious injuries. She also stated that her injuries were the result of an accident and that the insured did not intend to hurt her. The Insured testified that his former girlfriend was in a drunken stupor when she came to his condominium. After retrieving the key, she crossed the threshold and walked at least six to ten feet inside the Insured's condominium. He asked her to leave his residence three times, but she refused. Despite their size difference, he was fearful of her at that moment due to their previous altercation. He said that, when she would not leave, he picked her up in a bear hug, lifting her about three inches off the floor, and began carrying her outside. He said that she was shouting obscenities and fighting to stay on his property. In the process he accidentally tripped and fell off the porch, thereby injuring her.

Having had the opportunity to observe the insured and to hear his testimony and his responses to cross-examination *ore tenus* and taking into consideration the former girlfriend's intoxicated state and her actions earlier in the evening when she was involved in an altercation and ejected from a bar, the Court finds the Insured's version of what occurred to be more credible. Therefore, all conflicts in the evidence are resolved in the Insured's favor.

From the evidence presented, the Court finds as a matter of fact that the Insured was lawfully on his own premises at approximately 2:30 a.m. when his former girlfriend arrived. After retrieving and returning the key, the former girlfriend entered the Insured's residence over his objection. He stated that he was afraid of her and felt threatened because she was drunk and shouting obscenities, had assaulted him earlier that evening in a public bar, and refused to leave after being told three times to get out of his house, three times. After she had advanced six to ten feet into his residence, the insured wrapped his arms around her, lifted her approximately three inches off the floor, and began carrying her off of his premises. All the while she was struggling and fighting to remain in his condominium. When he reached the porch, he lost his balance

and both of them fell. His former girlfriend was seriously injured when she struck the ground.

Under the terms of the homeowner's policy issued to the Insured, the Plaintiff is obligated to pay for any bodily injuries for which the Insured is legally liable as the result of an "occurrence," up to its policy limits. The terms of the policy exclude coverage for any injuries which are "expected or intended by the insured." The term "occurrence" has been defined by the courts of the Commonwealth to mean an "accident" or an "incident that was unexpected from the standpoint of the insured." *Utica Mutual Ins. Co. v. Travelers Indemnity Co.*, 223 Va. 145, 147 (1982). An intentional act, on the other hand, is neither an "occurrence" nor an "accident." *Id.* To trigger the exclusion provided under the policy for intentional acts, the insured must have undertaken an act with the intent to cause harm to another. *Infant C. v. Boy Scouts of Am., Inc.*, 239 Va. 572, 582 (1990). It is not sufficient that the insured intentionally undertook the underlying act, albeit negligently; rather, the insured must have intended the resulting harm. *Id.* See *Johnson v. Insurance Co. of North Am.*, 232 Va. 340 (1986).

Here, the insured was lawfully exercising self-help to evict a trespasser from inside of his home. *See Montgomery v. Commonwealth*, 99 Va. 833, 835 (1901); *Pike v. Commonwealth*, 24 Va. App. 373 (1997). He used no more force than was necessary to eject her. *Diffendal v. Commonwealth*, 8 Va. App. 417 (1989). The force was not excessive. His manner of wrapping his arms around her to prevent her from harming him, his property, or herself, while removing her from his residence, was reasonable and proper. No breach of the peace was committed by the insured. No attempt was made on the part of the insured to cause harm to his former girlfriend. He did not intend to harm her. No intentional tort occurred. Her injuries were not necessarily the natural, probable, and foreseeable consequences of his actions. His actions were not willful and wanton, nor were they taken with a callous disregard for the safety of the trespasser. *See Infant C.*, 239 Va. at 582. *Cf. Norman v. Insurance Co. of North Am.*, 218 Va. 718, 723-24 (1978). If the Insured is to be held liable to his former girlfriend for her injuries, it will be because a jury determines that he negligently performed the lawful act of intentionally removing her from his premises.

Accordingly, the Court finds that the acts leading to the former girlfriend's injuries arose from an occurrence as contemplated by the policy of insurance and not from an intentional tort. As a result, the Plaintiff is contractually required to provide a defense to Insured and to pay any judgment for negligence rendered against him up to the policy limits. In reaching this decision, the Court has not considered the defenses of contributory negligence or assumption of the risk.