COURT OF APPEALS OF VIRGINIA


Present:   Judges Clements, Haley and Senior Judge Annunziata
Argued at Alexandria, Virginia


FRANK LINWOOD MURRAY, JR.

                                              MEMORANDUM OPINION[*] BY
v.        Record No. 1515-05-4                JUDGE JEAN HARRISON CLEMENTS
                                                    AUGUST 29, 2006
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                        Benjamin N. A. Kendrick, Judge

        Thomas K. Plofchan, Jr., for appellant.

        Stephen R. McCullough, Assistant Attorney General (Robert F.
        McDonnell, Attorney General, on brief), for appellee.


        Frank Linwood Murray, Jr., (appellant) was convicted in a jury trial of driving while

intoxicated, in violation of Code § 18.2-266.  On appeal, appellant contends the trial court erred in

giving certain instructions to the jury and refusing to give other instructions.  For the reasons that

follow, we affirm appellant's conviction.

        As the parties are fully conversant with the record in this case, and because this

memorandum opinion carries no precedential value, this opinion recites only those facts and

incidents of the proceedings as are necessary to the parties' understanding of the disposition of

this appeal.

                                    I.  BACKGROUND

        We view the evidence and all reasonable inferences that may be drawn from that evidence in

the light most favorable to the Commonwealth, the party prevailing below.  Wiggins v.

_____
        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Commonwealth, 47 Va. App. 173, 177, 622 S.E.2d 774, 775 (2005).  So viewed, the evidence in this case established that, around 3:00 a.m. on September 18, 2004, Officer Stephen Roeseler of the Arlington County Police observed appellant stopped in the middle of the road changing a flat tire of his vehicle.  Appellant's tools were "spread out" in the road.  Officer Roeseler further observed that the rim of the flattened tire was "dented in."

When Officer Roeseler approached appellant, he detected a "strong" odor of alcohol emanating from him.  Appellant's eyes were bloodshot, and he "seemed very excited."  He spoke rapidly with little pause.  When the officer asked what had happened to his car, appellant was initially "very evasive" but eventually told Officer Roeseler that he thought he had struck something when he left the parking lot of a nearby convenience store around 2:25 a.m.  Appellant was not sure what it was he had hit, however.  Appellant acknowledged that the vehicle was his and that he had driven it to its present location before stopping to change the flat tire.  Appellant also told Officer Roeseler that he had no physical impairment or illness but thought he had taken Lexipro, a prescription anti-anxiety medication, approximately five hours earlier.

Appellant then agreed to perform a series of field sobriety tests.  While performing the one-legged-stand test, appellant swayed repeatedly and had to put his foot down about seventeen times.  While attempting the walk-and-turn test, appellant was unable to walk in a straight line and "stumbled very badly and almost fell" when he turned around.  When instructed by Officer Roeseler to recite the alphabet from D through L, appellant omitted the letter G and, when instructed to count backwards from 62 to 39, he miscounted between 60 and 58 and continued to 30.

When asked by Officer Roeseler whether he had been drinking, appellant said he had had an alcoholic drink called "redheaded sluts" in a bar earlier that night, but he was not sure how many of those drinks he had consumed.  Although there was an empty wine bottle in his car, appellant stated

he had had no alcohol to drink since leaving the bar. After administering a preliminary breath test, Officer Roeseler placed appellant under arrest for driving while intoxicated.

After being informed of the Virginia implied consent law, appellant submitted to a breath-analysis test administered by Officer Fernando Ordonez. Before administering the test, Officer Ordonez noted appellant's bloodshot eyes and the odor of alcohol emanating from him. Appellant satisfactorily completed the breath-analysis test at 5:10 a.m. According to the certificate of blood alcohol analysis generated by the Intoxilyzer 5000 machine used to perform the breath-analysis test, appellant had a blood alcohol concentration of .20 grams per 210 liters of breath. Officer Ordonez did not observe anything unusual about appellant during the test, and appellant did not indicate, in response to the officer's questions, that he felt ill or had any condition that would interfere with the test.

At trial, appellant testified that he went out to celebrate his twenty-first birthday that night and that he intended to "have a good time." According to appellant, he and a friend went to a bar, where appellant drank a shot of liquor and two beers before leaving the bar around l:00 a.m. After taking his friend home, appellant stopped at the convenience store to get a snack. Appellant explained that the flat tire was the result of his car having struck a pothole as he drove out of the convenience store parking lot. Appellant denied being intoxicated. Appellant's friend testified that he did not observe any signs of intoxication when appellant drove him home after consuming the three alcoholic drinks.

Appellant also testified that he takes Lexipro to treat anxiety and "panic attacks." He further testified that he takes an undisclosed medication for Gastro Esophageal Reflux Disease (GERD), an illness often triggered by anxiety that brings gases or acid painfully from the stomach to the mouth. Appellant testified that on the night he was arrested he experienced GERD twenty or thirty times, and eight or nine times during the twenty-minute period before the breath-analysis test was

conducted. He never informed Officer Ordonez that he suffered from GERD or that he had taken GERD medication, testifying "nobody asked" and the subject "never came up."

Richard James McGarry testified as an expert for the defense on "the theory of breath test analysis, the use, operation and internal workings of the Intoxilyzer 5000, and the conduct and evaluation of field sobriety exercises." He testified that two of the four field tests appellant was asked to perform—the backwards counting and the partial alphabet recitation—lack a scientific foundation, are not approved by the National Highway and Traffic Safety Administration, and are irrelevant to a determination whether a person is under the influence of alcohol. The other two tests are accurate two-thirds of the time, he stated. Basing his assessment on Officer Roeseler's description of appellant's performance on the field sobriety tests, McGarry opined that appellant's performance did not "reflect[] severe impairment."

McGarry also testified that breath testing is not an accurate measure of an individual's blood alcohol content because it relies on uniform assumptions that, in actuality, vary with each individual. For example, McGarry testified, breath tests assume that alcohol in the breath is the same as alcohol in the blood when, in fact, the correlation of breath alcohol to blood alcohol varies with each individual. He also noted that breath tests assume a uniform temperature in the mouth, yet individual mouth temperature varies. An elevated temperature in the mouth would create more alcohol in the breath, he explained.

McGarry further explained that the human body dissipates alcohol over time at a rate of assimilation varying from .015 to .010 percent per hour. Applying the .010 rate and factoring in appellant's body weight, McGarry opined that the amount of alcohol appellant admitted consuming between 9:00 p.m. and 1:00 a.m. would not have caused him to be intoxicated when he left the bar at 1:00 a.m. McGarry also opined that appellant's regurgitation or GERD may have triggered an artificially elevated result on the Intoxilyzer 5000 machine.

Alka Bhargava Lohmann, the Breath Alcohol Section Chief at the Virginia Division of Forensic Science, testified for the Commonwealth as an expert on the Intoxilyzer 5000 and the effects of alcohol on the human body. She testified that, because appellant consumed his last drink at least four hours before the breath-analysis test was conducted, appellant's GERD-linked reflux would have had no impact on the results of the breath test. She also testified that the Intoxilyzer 5000 is able to detect the presence of substances in a subject's breath that can falsely elevate a breath test result and will abort the test and inform the tester that an interfering substance was detected. Lohmann further explained that, to register a blood alcohol content of .20 grams per 210 liters of breath at 5:10 a.m., appellant would have to have consumed more than ten ounces of eighty proof liquor, that is approximately seven or eight shots, when he was at the bar. Lohmann also testified that Lexipro's chemical structure does not affect the breath test but may cause drowsiness when combined with alcohol.

Following the close of the evidence, the Commonwealth announced during a discussion of jury instructions that it was proceeding under subsections (i), (ii), and (iv) of Code § 18.2-266. To that end, the Commonwealth offered Instruction Nos. 4 and 5. Instruction No. 4 read, in pertinent part, as follows:

> The defendant is charged with the crime of driving while intoxicated. The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:
>
> (1) That the defendant was driving or operating a motor vehicle; and
> (2) That at the time he had a blood alcohol concentration of 0.08 percent or more of alcohol per 210 liters of breath . . . .

Instruction No. 4 also informed the jury that, if, in addition to proving beyond a reasonable doubt the above elements, the Commonwealth also proved beyond a reasonable doubt that the defendant "had a blood alcohol concentration of more than 0.15 but not more than 0.20" at the time he was

driving or operating a motor vehicle, it "shall find [him] guilty of driving while intoxicated with a blood alcohol concentration of more than 0.15 but not more than 0.20."

Instruction No. 5 read, in pertinent part, as follows:

> The defendant is charged with the crime of driving while intoxicated. The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:
>
> (1) That the defendant was driving or operating a motor vehicle; and
> (2) That at the at the time he was under the combined influence of alcohol and any drug or drugs to a degree which impaired his ability to drive or operate a motor vehicle safely or he was under the influence. . . .

The trial court granted Instruction Nos. 4 and 5 over appellant's objection on an enhanced-punishment ground unrelated to this appeal.

The Commonwealth also offered Instruction No. 6 to advise the jury of the statutory presumption set forth in Code § 18.2-269(A)(3). The instruction read:

> You have received evidence of the amount of alcohol concentration of the defendant at the time that a chemical test was administered. If at that time the concentration was 0.08 or more, there is a rebuttable presumption that the defendant was under the influence of alcohol at the time of the alleged offense. This presumption may be rebutted by other evidence.

Appellant's counsel objected to the instruction on two grounds. First, he argued: "The presumption has been rebutted. Now it becomes an issue for the jury. There is no rebuttable presumption once it has been rebutted. Once there's been evidence, you can't make my client now prove something in this particular case." In response to the trial court's suggestion that the jury may not believe appellant's rebuttal evidence, appellant's counsel continued:

> There's still no rebuttable presumption. They have the instruction. They have to find he was a .08 or more.
> What you're telling them now is unless we disprove .08, all right, that you would have to find because it's a rebuttable presumption.

> That shifts the burden to us to prove it, that we have to disprove what's on the certificate.
>
> Once a presumption has been rebutted, it's no longer a rebuttable presumption. It's just a fact that the jury has to find.

Finding the presumption was not rebutted as a matter of law and was "a question of fact" for the jury, the trial court rejected appellant's argument.

Second, appellant argued that Instruction No. 6 was not appropriate because the Commonwealth was proceeding under Code § 18.2-266(i). The Commonwealth did not contest appellant's second argument and suggested the jury could be instructed that Instruction No. 6 was to be used solely in connection with Instruction No. 5. Agreeing, the trial court so amended the instruction before submitting it to the jury.

The Commonwealth also offered Instruction No. 7, which read:

> You have received evidence of the amount of alcohol concentration of the appellant at the time that a chemical test was administered. If at the time the concentration was 0.15 but not more than 0.20, there is a rebuttable presumption that the appellant had a blood alcohol concentration of 0.15 but not more than 0.20 at the time of the alleged offense. This presumption may be rebutted by other evidence.

Appellant objected to Instruction No. 7, stating it would lead to an improper presumption and the instruction would be confusing to the jury because it was not to be used with Instruction No. 5. Amending the instruction to indicate it was to be read solely with Instruction No. 4, the trial court submitted Instruction No. 7 to the jury over appellant's objection.

Appellant offered several "cautionary" jury instructions, including Instructions A, B, C, M, U, and W. Instruction A informed the jury that the defense introduced evidence that the Intoxilyzer test result was "not an accurate measure of his blood alcohol content at the time []he was driving" and the jury had to find appellant not guilty if the jury believed that evidence "create[d] a reasonable doubt as to [his] guilt." Instruction B advised the jury that it must find appellant not guilty if it "had a reasonable doubt whether the alcohol level would have been .08% or above at the time the

- 7 -

Accused was driving." Instruction C stated that the result of the Intoxilyzer test was not binding on the jury and that it was "proper for [the jury] to consider and weigh [the test result] with all of the other evidence in [the] case in arriving at [its] verdict." Instruction M stated that there was "no presumption of the accuracy of the breath test device or of its indication of intoxication at the time the Accused was driving" and advised the jury that it was "free to acquit the Accused despite any evidence from the breath test device." Instruction U informed the jury that the Commonwealth must prove beyond a reasonable doubt that "the Accused drove while under the influence" and that the jury "need not infer that the Accused was under the influence of an alcoholic beverage at the time of the alleged offense" even if the Commonwealth "establishe[d] beyond a reasonable doubt" that appellant had a blood alcohol content of 0.20 at the time of the Intoxilyzer test. Instruction W stated that appellant "introduced evidence for the purpose of showing that the blood alcohol determination by the police was inaccurate" and that the jury "must give the Accused the benefit of [the] doubt" if it has "a reasonable doubt as to the accuracy of the police test." Appellant argued that such instructions were necessary to inform the jury that the defense may "rebut the presumption." Finding they were "comment[s] on the evidence" better suited for closing argument than instruction or redundant of previously granted instructions, the trial court denied Instructions A, B, C, M, U, and W.

The verdict form provided to the jury listed four possible verdict options: (1) "We, the Jury, find the Defendant Guilty of Driving While Intoxicated with a [blood alcohol concentration] of more than .15 and less than .20 as charged in the warrant (See Instruction 4)"; (2) "We, the Jury, find the Defendant Guilty of Driving While Intoxicated with a [blood alcohol concentration] of .08 or more as charged in the warrant (See Instruction 4)"; (3) "We, the Jury, find the Defendant Guilty of Driving While Intoxicated as charged in the warrant (See Instruction 5)"; and (4) "We, the Jury, find the Defendant Not Guilty." The jury convicted appellant under option 3 and fixed his

sentence at ten days in jail and a $1,500 fine. The trial court imposed the jury's recommended sentence.

We awarded appellant an appeal on two questions presented: (1) "Whether the trial court committed reversible error when it failed to instruct the jury that the blood alcohol level on a breath test does not shift the burden of proof to the appellant?" and (2) "Whether the trial court committed reversible error when it instructed the jury that the test results are evidence of [a]ppellant's blood alcohol content at the time of the offense, when an expert testified that a breath test measures blood alcohol content at the time of the test?"

## II. ANALYSIS

Appellant contends, on appeal, that, in granting Instruction Nos. 6 and 7 and in denying Instructions A, B, C, M, U, and W, the trial court violated his constitutional rights to due process under the Fourteenth Amendment and to trial by jury under the Sixth Amendment. Appellant further contends the trial court erred in instructing the jury regarding the rebuttable presumptions in Instruction Nos. 6 and 7 because he presented evidence to rebut those presumptions. Finally, appellant contends the trial court erred in "fail[ing] to define a 'rebuttable presumption' for the jury."

## A. Instruction No. 7

The Commonwealth contends we may not consider appellant's arguments as they relate to Instruction No. 7 because that instruction played no part in appellant's conviction. Thus, the Commonwealth argues, appellant's claims relating to Instruction No. 7 are moot. Appellant conceded as much in oral argument, and we agree.

"As a general rule, '[m]oot questions are not justiciable and courts do not rule on such questions to avoid issuing advisory opinions.'" In re Times-World Corporation, 7 Va. App. 317,

323, 373 S.E.2d 474, 476 (1988) (quoting United States v. Peters, 754 F.2d 753, 757 (7th Cir. 1985)). This is so because

> "[t]he duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it."

Hankins v. Town of Virginia Beach, 182 Va. 642, 644, 29 S.E.2d 831, 832 (1944) (quoting Mills v. Green, 159 U.S. 651, 653 (1895)). "'It is not the office of courts to give opinions on abstract propositions of law, or to decide questions upon which no rights depend, and where no relief can be afforded. Only real controversies and existing rights are entitled to invoke the exercise of their powers.'" Id. at 643-44, 29 S.E.2d at 832 (quoting Franklin v. Peers, 95 Va. 602, 603, 29 S.E. 321, 321 (1898)); see also Baldwin v. Commonwealth, 43 Va. App. 415, 421, 598 S.E.2d 754, 757 (2004) ("'[A] case is moot when the issues presented are no longer "live,"' Powell v. McCormack, 395 U.S. 486, 496 (1969), because 'an actual controversy must be extant at all stages of review,' to escape the notion that a case is moot, Preiser v. Newkirk, 422 U.S. 395, 401 (1975).").

In selecting option 3 on the verdict form, the jury explicitly based appellant's conviction on Instruction Nos. 5 and 6, without recourse to Instruction No. 7. Thus, even if we were to agree with appellant that the trial court erred in submitting Instruction No. 7 to the jury, we could offer him no effectual relief since his conviction was based on another instruction entirely. Because Instruction No. 7 played no part in the jury's decision to find appellant guilty of the charge against him, any determination we render with respect to that instruction would be merely advisory. Having determined that Instruction No. 7 is not a proper subject for appellate review, we will not address appellant's arguments as they relate thereto.

B.  Federal Constitutional Rights

The Commonwealth contends appellant's claim that the trial court erred in granting Instruction No. 6 and denying Instructions A, B, C, M, U, and W violated his federal constitutional rights to due process and trial by jury is procedurally barred under Rule 5A:18 because appellant never raised that specific claim at trial.  We agree.

Rule 5A:18 provides in pertinent part that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice."  Pursuant to Rule 5A:18, we "will not consider an argument on appeal [that] was not presented to the trial court."  Ohree v. Commonwealth, 25 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998).  "Rule 5A:18 applies to bar even constitutional claims."  Id.

> Under this rule, a specific argument must be made to the trial court at the appropriate time, or the allegation of error will not be considered on appeal.  A general argument or an abstract reference to the law is not sufficient to preserve an issue.  Making one specific argument on an issue does not preserve a separate legal point on the same issue for review.

Edwards v. Commonwealth, 41 Va. App. 752, 760, 589 S.E.2d 444, 448 (2003) (en banc), aff'd, No. 040019 (Va. Sup. Ct. Order of 10/15/04).  Thus, "though taking the same general position as in the trial court, an appellant may not rely on reasons which could have been but were not raised for the benefit of the lower court."  West Alexandria Properties, Inc. v. First Va. Mortgage & Real Estate Inv. Trust, 221 Va. 134, 138, 267 S.E.2d 149, 151 (1980).  In short, we will not consider an argument on appeal that is different from the specific argument presented to the trial court, even if it relates to the same issue.  See Buck v. Commonwealth, 247 Va. 449, 452-53, 443 S.E.2d 414, 416 (1994) (holding that appellant's failure to raise the same specific arguments "before the trial court precludes him from raising them for the first time on appeal").  The main purpose of this rule is to ensure that the trial court and opposing party are given the opportunity to intelligently address,

examine, and resolve issues in the trial court, thus avoiding unnecessary appeals and reversals. Lee v. Lee, 12 Va. App. 512, 514, 404 S.E.2d 736, 739 (1991) (en banc); Kaufman v. Kaufman, 12 Va. App. 1200, 1204, 409 S.E.2d 1, 3-4 (1991).

Citing several federal cases, appellant contends on appeal that, in granting Instruction No. 6 and denying his cautionary instructions, the trial court created a mandatory rebuttable "presumption of a fact essential to guilt" in violation of his federal constitutional rights to due process and trial by jury. Appellant, however, never raised this specific contention below. Instead, he argued to the trial court that the rebuttable presumption referenced in Instruction No. 6 was inapplicable because he presented evidence sufficient to rebut the presumption. Having rebutted the presumption, he argued below, "[t]here [was] no rebuttable presumption" and it became "an issue for the jury." Alternatively, appellant argued that Instruction No. 6 was improper because the Commonwealth was proceeding under Code § 18.2-266(i). Rejecting appellant's first argument, the trial court found that the question whether appellant had rebutted the presumption was a factual question for the jury to decide. Accepting appellant's second argument, the court amended Instruction 6 to indicate it was to be applied solely in determining appellant's culpability under Code § 18.2-266(ii) and 18.2-266(iv). It is clear, therefore, that, despite having had the opportunity to do so, appellant did not raise below, and the trial court was not given the opportunity to address, the federal constitutional claim appellant now raises on appeal.

Although appellant obliquely stated in the midst of his first argument to the trial court that the presumption shifted the burden to the defense, this scant, undeveloped assertion did not suffice, by itself, to alert the trial court to appellant's present constitutional claim. Similarly, although appellant's Instruction M cited Sandstrom v. Montana, 442 U.S. 510, 514-24 (1979) (holding that due process forbids the use of a presumption that relieves the prosecution of proving an element of the crime charged), neither the instruction itself nor appellant's discussion of that instruction alerted

- 12 -

the trial court to the existence of a federal constitutional problem or the specific constitutional claim raised on appeal. Our Supreme Court has ruled that such a citation on a jury instruction "does not satisfy the requirement that an objection be stated 'with reasonable certainty at the time of the ruling.'" Morgen Indus., Inc. v. Vaughan, 252 Va. 60, 68, 471 S.E.2d 489, 493 (1996) (quoting Rule 5:25).

Moreover, our review of the record reveals no reason to invoke the "ends of justice" or "good cause" exceptions to Rule 5A:18. See Edwards, 41 Va. App. at 761, 589 S.E.2d at 448 ("We will not consider, *sua sponte*, a 'miscarriage of justice' argument under Rule 5A:18."); M. Morgan Cherry & Assocs. v. Cherry, 38 Va. App. 693, 702, 568 S.E.2d 391, 396 (2002) (en banc) (holding that the "good cause" exception to Rule 5A:18 will not be invoked where appellant had the opportunity to raise the issue at trial but did not do so). We hold, therefore, that appellant is barred by Rule 5A:18 from raising this claim for the first time on appeal.

### C. Rebuttable Presumption

As previously mentioned, appellant also claims the trial court erred in instructing the jury regarding the presumption referenced in Instruction No. 6 because he presented sufficient evidence to rebut that presumption. "Once an evidentiary presumption operating in favor of the government is met and overcome," appellant argues, "the court should make no reference to it."

Appellant's brief, however, provides no analytical support for the bald assertion that he rebutted the presumption. Indeed, the brief makes no mention whatsoever of the trial court's ruling that the presumption was not rebutted as a matter of law and was "a question of fact" for the jury. At oral argument, appellant's counsel acknowledged that appellant's assertion that he rebutted the presumption was based on the proposition that any evidence presented "in contradiction to the presumption" will suffice to rebut the presumption. Thus, counsel continued, "if the defendant offers any evidence to rebut the presumption, it is error to instruct the jury of the statutory

- 13 -

presumption." Appellant's counsel, however, provided no authority for the proposition and made no further argument in support thereof. Likewise, no argument or authority for the proposition appears in appellant's brief, despite its significance to appellant's claim. We hold, therefore, that appellant failed to comply with Rule 5A:20, which requires that an appellant's opening brief include the "principles of law, the argument, and the authorities relating to each question presented." See also Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992) ("Statements unsupported by argument [or] authority . . . do not merit appellate consideration.").

Moreover, neither question presented upon which we granted an appeal raises this issue. Appellant's counsel argued that the second question presented—"Whether the trial court committed reversible error when it instructed the jury that the test results are evidence of [a]ppellant's *blood alcohol content at the time of the offense*, when an expert testified that a breath test measures blood alcohol content at the time of the test?"—encompasses the present issue. It is clear from the wording of the second question presented, however, that it is limited to Instruction No. 7. "On appeal, we will consider 'only those arguments presented in the petition for appeal and granted by this Court . . . .'" Megel v. Commonwealth, 37 Va. App. 676, 679, 561 S.E.2d 21, 22 (2002) (quoting Alexander v. Commonwealth, 28 Va. App. 771, 776, 508 S.E.2d 912, 914, aff'd en banc, 30 Va. App. 152, 515 S.E.2d 808 (1999), rev'd on other grounds, 260 Va. 238, 531 S.E.2d 567 (2000)); see also Puckett v. Commonwealth, 134 Va. 574, 579, 113 S.E. 853, 854 (1922) ("The object of the [question presented] is to point out the specific errors claimed to have been committed by the court below in order to enable the reviewing court and opposing counsel to see on what points [appellant's] counsel intends to ask a reversal of the judgment or decree, and to limit discussion to those points."). Hence, we will not consider the merits of appellant's claim.

The same procedural restriction applies to appellant's final contention that the trial court erred in "fail[ing] to define a 'rebuttable presumption' for the jury." Because that contention is not

the subject of the challenges raised by appellant in either of the questions presented upon which we granted an appeal, we will not consider the merits of it here.  <u>Megel</u>, 37 Va. App. at 679, 561 S.E.2d at 22.

## III.  CONCLUSION

Finding our consideration of the merits of appellant's claims of error barred, we affirm appellant's conviction.

<u>Affirmed.</u>