PRESENT: All the Justices

LATOYA NICOLE CARTER

                                            OPINION BY

v. Record No. 201145                JUSTICE STEPHEN R. McCULLOUGH
                                       December 22, 2021

COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

LaToya Carter was convicted of battering a police officer, a felony, under Code
§ 18.2-57(C). She contends that she should not have been convicted because she lawfully used
force to expel a trespassing officer. For the reasons detailed below, we affirm her conviction.

BACKGROUND

On January 24, 2018, after 10:00 p.m., Officer S.C. Reed of the Lynchburg Police
Department was dispatched to Carter's home. As the footage from Officer Reed's body camera
attests, when he arrived, the situation was loud and chaotic. He found several individuals
screaming at each other in front of Carter's home. Officer Reed was alone and he did not know
the reason for the emergency call or "what the situation was at that point."

Carter was standing in the doorway of the residence, yelling at Deshawn Penicks, who
was standing on the front porch. Penicks told Officer Reed he lived at the residence and was
trying to retrieve his belongings from inside. Carter yelled that Penicks had put his hands on her
and needed to go. Carter kept screaming, making it difficult for Officer Reed to hear Penicks.
Officer Reed told Carter, "ma'am stop talking," in response to which she yelled, "I ain't ma'am
nothing." Officer Reed told Carter he was "only going to speak to one person at a time."
Another person on the porch began arguing with Carter and was restrained by a third party.
Carter continued to scream that Penicks "showed off in front of [her] son" and "is not coming in

here." Body Cam Footage 1:55-2:09. Officer Reed said, "I'm standing right in front of you."
At that point, the body camera footage reflects, Officer Reed was standing at the threshold, with his body in the frame of the door. The body camera footage shows that Carter tried to slam the door after she said "I don't give a f**k where you standing at. Take his a*s to jail with his abusive a*s." Body Cam Footage at 2:14-17. Officer Reed placed his foot in the way of the closing door. He said, "Ma'am, you're not going to slam the door on me." *Id*. at 2:16-18. Carter tried to shut the door several more times, striking Officer Reed's foot each time.

Officer Reed then forced his way into the residence. Carter "bowed up and got into [his] face," and started screaming at him. He grabbed Carter's right arm and told her to place her hands behind her back. He placed her in handcuffs during what he later referred to as an "investigative detention." Carter resisted and repeatedly yelled "get the f**k off of me," as she swung her left arm at Officer Reed and "elbowed" him three times.

Carter was charged with assault and battery on a police officer, a felony, under Code § 18.2-57(C). At her bench trial, she argued in closing argument that she had used force to expel a trespasser and, therefore, her use of force was lawful. The circuit court disagreed and convicted her. Carter also filed a motion to set aside the verdict, again arguing that she used force to expel a trespasser and, therefore, she could not be convicted of assault and battery. The circuit court denied the motion. The Court of Appeals, by unpublished opinion, affirmed the judgment, holding there was sufficient evidence to support the conviction. This appeal followed.

ANALYSIS

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Scott v.*

*Commonwealth*, 292 Va. 380, 381 (2016) (citing *Baldwin v. Commonwealth*, 274 Va. 276, 278 (2007)).

Carter contends that she is not guilty of battering the officer because she was lawfully using force to expel a trespasser. The trespass statute, Code § 18.2-119, provides in relevant part:

> If any person without authority of law goes upon or remains upon the lands, buildings or premises of another, or any portion or area thereof, after having been forbidden to do so, either orally or in writing, by the owner, lessee, custodian . . . or other person lawfully in charge thereof . . . he shall be guilty of a Class 1 misdemeanor.

Additional background principles from the common law shape our understanding of the law of trespass. As Professor LaFave explains, "[t]he intrusive act required for the crime of criminal trespass is an entering of or remaining within or upon the specified premises in circumstances where such action is in fact contrary to law." Wayne R. LaFave, 3 Substantive Criminal Law, § 21.2(a) (3d ed. 2020).

Once a landowner (or tenant) orders the trespasser to leave the property, if the trespasser disregards this order, the landowner (or tenant) is then permitted to use reasonable force to expel the trespasser. *See Montgomery v. Commonwealth*, 99 Va. 833 (1901). *See also Pike v. Commonwealth*, 24 Va. App. 373, 375 (1997). A person who has been ordered to leave must do so within a reasonable amount of time under the circumstances. LaFave, 3 Substantive Criminal Law, § 21.2(a) ("[I]t should not be assumed that the requisite remaining occurs immediately following that event [i.e., the giving of some verbal or non-verbal command to leave]; it is merely necessary for the defendant [trespasser] to leave "'within a reasonable time in the circumstances.'"). The law thus requires two preconditions that must be satisfied before a person in lawful possession of the premises can employ reasonable force to expel a trespasser: a

command to leave must be issued and the trespasser then must be given a reasonable amount of time, considering the circumstances, to comply with this command and leave.

Carter relies on these principles to contend that her conduct was tantamount to an order to leave and, when Officer Reed did not leave, she could properly resort to force. She further argues that the officer was trespassing and, therefore, he was not lawfully engaged in the performance of his duties. *See* Code § 18.2-57(C) (prohibiting an assault and battery against a law enforcement officer who is "engaged in the performance of his public duties"). The circuit court, sitting as factfinder, rejected Carter's argument that she was privileged to use force to expel a trespasser. Under the applicable standard of review, viewing the evidence in the light most favorable to the prevailing party, we affirm. The evidence does not establish that Carter issued a command to leave before she resorted to violence and, additionally, she did not allow the officer any time to leave before using force.

At the outset, we note that the officer was lawfully present on Carter's porch. Whenever an officer reasonably believes a person has violated the law, it is the officer's duty to investigate and, if appropriate, arrest the responsible individuals. *Davis v. Commonwealth*, 44 Va. App. 562, 568 (2004) (applying Code § 18.2-57(C)); *see also* Code § 15.2-1704(A) (stating police are "responsible for the prevention and detection of crime, the apprehension of criminals, the safeguard of life and property, the preservation of peace and the enforcement of state and local laws, regulations, and ordinances"). Officer Reed was dispatched to Carter's home, heard screaming when he arrived, and he was uncertain whether any acts of violence had occurred or would occur inside the apartment; therefore, he investigated. That investigation took him to the porch of Carter's residence. Carter was standing inside the residence, with the door open.

4

Officer Reed's initial presence at the threshold of Carter's home for investigative purposes was plainly lawful. *See, e.g., Kentucky v. King*, 563 U.S. 452, 469 (2011).

The record, including the body camera footage, does not contain a verbal assertion by Carter that the officer needed to leave the premises – and Carter does not contend otherwise. Although we agree with Carter that a command to leave can be made either verbally or non-verbally, she did not by her gestures or otherwise issue a non-verbal command to leave *before* battering Reed. The video footage shows that Carter attempted to shut the door on an officer, who was standing in the doorway, and he placed his foot to stop the door from closing. Carter did not issue a command, verbal or non-verbal, to leave before she resorted to force. Additionally, once Carter manifested her desire by her conduct that the officer should leave, she was required to give him a reasonable time under the circumstances to leave. She did not do so. In short, the circuit court correctly concluded on the facts before it that Carter's use of force was not justified by the law of trespass.[1]

Carter also invokes the Fourth Amendment of the United States Constitution and relies on cases involving suppression motions. Carter argues that because Officer Reed's entry into her home was in violation of the Fourth Amendment, he was not acting in the performance of his duties as a police officer. We find these arguments unpersuasive.

Carter did not file a suppression motion. Therefore, cases dealing with the suppression of evidence are inapposite. And while we certainly agree with Carter that the home is at the core of what the Fourth Amendment protects, s*ee, e.g., Florida v. Jardines*, 569 U.S. 1, 6 (2013), that

---

[1] In light of our disposition, we need not address whether the force Carter employed – slamming the door three times on the officer's foot and then repeatedly elbowing him – was reasonable. *See Montgomery*, 98 Va. at 844.

5

does not end the inquiry. The officer was certainly permitted to knock on Carter's door to investigate a possible domestic disturbance. *King*, 563 U.S. at 469. Rather than giving the officer a warning to leave and allowing him some time to comply with this warning, Carter tried to close the door on him, and he extended his foot to stop the door from closing. She then repeatedly slammed the door on his foot. The United States Supreme Court has upheld an arrest under similar circumstances. In *United States v. Santana*, 427 U.S. 38, 42 (1976), the Court determined that a defendant who was arrested in her doorway "was not merely visible to the public but was exposed to public view, speech, hearing, and touch as if she had been standing completely outside her house." *Id.* Therefore, the defendant was in a "public place" and could be arrested without a warrant. *Id.* Her subsequent retreat into the home did not foreclose the officer from continuing the arrest. The Supreme Court held that "a suspect may not defeat an arrest which has been set in motion in a public place . . . by the expedient of escaping to a private place." *Id.* at 43. So too here, Officer Reed could properly proceed to arrest Carter inside her home after she battered him.[2]

CONCLUSION

For the foregoing reasons, we will affirm the judgment of the Court of Appeals.

*Affirmed.*

---

[2] This case does not involve a situation like *Payton v. New York*, 445 U.S. 573 (1980), where officers developed probable cause to arrest a suspect for a completed crime and then, days after the commission of the crime, entered his home without a warrant to arrest him. Nor does this case present a situation, as in *Lange v. California*, 141 S. Ct. 2011 (2021), where the officers suspected a *misdemeanor* had been committed outside of the home, the officers followed as the suspect retreated into his home, and the officers then entered the home without a warrant. Here, police had probable cause to believe Carter had committed a felony at the threshold of her home, against the officer who was standing at the threshold and proceeded to make an arrest in the immediate aftermath of the battery.

6