COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Elder and Kelsey
Argued at Salem, Virginia


THOMAS CLAYTON BALDWIN, SR.

v.      Record Nos.  1658-01-3 and 1668-01-3

COMMONWEALTH OF VIRGINIA                          OPINION BY
                                                 JUDGE JAMES W. BENTON, JR.
THOMAS CLAYTON BALDWIN, S/K/A                     JULY 6, 2004
 THOMAS CLAYTON BALDWIN, SR.

v.      Record Nos.  2289-01-3 and 2291-01-3

COMMONWEATLH OF VIRGINIA


             FROM THE CIRCUIT COURT OF TAZEWELL COUNTY
                        Donald R. Mullins, Judge

        Robert M. Galumbeck (Michael L. Dennis; Kelly C. Necessary;
        Dudley, Galumbeck, Necessary and Dennis, on brief), for appellant.

        Stephen R. McCullough, Assistant Attorney General (Jerry W.
        Kilgore, Attorney General, on brief), for appellee.


        The trial judge convicted Thomas Clayton Baldwin, Sr. of discharging a firearm within an

occupied dwelling house and possession of cocaine with the intent to distribute.  Baldwin contends

the trial judge erred by:  (1) prohibiting Baldwin from attending the judge's conference in chambers

with the attorneys to discuss post-sentencing motions and afterwards failing to make a record in

open court, (2) failing to hear Baldwin's post-sentencing objections and motions in a timely manner

and thereby denying him an opportunity to preserve a record for appeal, and (3) failing to suspend

an additional portion of Baldwin's sentence.  For the reasons that follow, we affirm the convictions.

I.

In accordance with two plea agreements, Baldwin pled guilty to indictments charging malicious discharge of a firearm within an occupied dwelling house and possession of cocaine with the intent to distribute. As a part of the agreement, the Commonwealth requested an order of *nolle prosequi* on other indictments. The trial judge granted the prosecutor's motion for an order of *nolle prosequi*, accepted Baldwin's guilty pleas, and ordered a pre-sentence report.

At the sentencing hearing, the probation officer testified that Baldwin admitted he had been selling cocaine for about a year prior to his arrest in July 2000. Describing Baldwin's employment history, the probation officer testified that Baldwin said he owned an automobile salvage business during the years 1995 through 2000. The probation officer also testified that Baldwin's social security records indicated he reported no income after 1990, that Baldwin said he only worked odd jobs between 1990 and 1995, and that Baldwin failed to provide documentation of his income or tax filings.

Based on the testimony of the probation officer and a narcotics investigator, the prosecutor argued that Baldwin's sparse employment history indicated a long course of selling narcotics and that Baldwin "was a pretty healthy drug dealer." Baldwin's attorney responded that Baldwin had sold narcotics for only a year and did not have an extensive criminal record. He also asked the trial judge to take into consideration that the sentencing guidelines recommended a range of imprisonment from three years and six months to five years and ten months and that the quantity of cocaine was on the "lower end of the scale." Indicating that he doesn't "follow the guidelines . . . [n]ot always," the trial judge announced that he was imposing a four-year sentence on the firearm charge, suspending two years, and a thirty-year sentence on the possession charge, suspending fifteen years.

On April 30, 2001, the same day the judge orally announced the sentence, Baldwin filed a written objection to the sentence and a motion for modification of the sentence. The pleading asserted that the trial judge failed to consider the sentencing guidelines and that no evidence proved Baldwin "had been dealing drugs for a long time"; it requested the judge to set a sentence "within the discretionary guidelines or to consider . . . alternative sentencing." According to a written statement of facts, Baldwin's objections and motion were to be heard on May 30, 2001. However, on May 24, 2001, the trial judge entered the sentencing order on the firearm conviction, which conformed to his oral ruling. On May 30, 2001, the trial judge directed Baldwin's attorney and the prosecutor to meet with him in chambers to discuss the basis for Baldwin's objection and motion. Baldwin's attorney informed the judge of the basis of the written motion and also said he intended to present a chart and copies of other court orders indicating that Baldwin's sentence was disproportionate to sentences given to similar defendants. The trial judge denied Baldwin's attorney's request for a formal hearing at which Baldwin would be present and also denied the attorney's request "to place on the record, in open court with [Baldwin] present, the proceedings which occurred in chambers." The judge also "directed . . . that [the] matters would be set out in an Order."

The following day, May 31, 2001, the trial judge entered the sentencing order on the narcotics conviction, which conformed to his oral ruling. Baldwin filed additional motions that same day requesting the trial judge to set aside the sentencing orders, to impose a sentence within the sentencing guidelines, or to impose an alternative sentence. When Baldwin's attorney appeared before the trial judge on June 22, 2001 to present an order memorializing the judge's May 30, 2001 ruling, the trial judge instead entered an order to stay and suspend the imposition of both sentences pending a hearing to be held on Baldwin's previously filed objections and motions. The trial judge

- 3 -

also ordered that Baldwin remain in the county jail and not be transferred into the custody of the Department of Corrections.

At a hearing on July 12, 2001, the trial judge heard argument on Baldwin's motions to set aside the sentences and to modify the sentences. A month after this hearing, the trial judge entered the final order denying Baldwin's objections to the sentence and denying his motions for modification of the sentence. Baldwin appeals the trial judge's rulings.

II.

Baldwin contends that the trial judge erred by considering in his absence the post-sentencing objection and motion and by failing to make a record in open court. He argues that the judge's decision to exclude him from the chambers conference violated his right to be present at the proceedings as protected by the Sixth Amendment and Code § 19.2-259. The Commonwealth responds that Baldwin had no constitutional or statutory right to be present.

It is well accepted as a constitutional principle that an accused has a due process "right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings." Faretta v. California, 422 U.S. 806, 819 n.15 (1975). In other words, "[s]o far as the Fourteenth Amendment is concerned, the presence of a defendant [at the hearing] is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." Snyder v. Massachusetts, 291 U.S. 97, 107-08 (1934).

> The [Supreme] Court has assumed that, even in situations where the defendant is not actually confronting witnesses or evidence against him, he has a due process right "to be present in his own person whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge." Although the Court has emphasized that this privilege of presence is not guaranteed "when presence would be useless, or the benefit but a shadow," due process clearly requires that a defendant be allowed to be present "to the extent that a fair and just hearing would be thwarted by his absence." Thus, a defendant is guaranteed the right to be present at any stage of the criminal

proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure.

Kentucky v. Stincer, 482 U.S. 730, 745 (1987) (citations omitted).

By statute in Virginia, "[a] person tried for felony shall be personally present during trial." Code § 19.2-259. "The statutory phrase 'during the trial' has been defined as 'every stage of the trial from [the accused's] arraignment to his sentence, when anything is to be done which can affect his interest.'" Bilokur v. Commonwealth, 221 Va. 467, 469-70, 270 S.E.2d 747, 749 (1980) (citations omitted).

We need not decide in this case whether Baldwin had either a constitutional or statutory right to be present on May 30, 2001, when the trial judge discussed his motions and objections in chambers with the attorneys, because we conclude that the July 12, 2001 hearing rendered the issue moot.

"[T]he general rule [is] that appellate courts do not sit to give opinions on moot questions or abstract matters, but only to decide actual controversies injuriously affecting the rights of some party to the litigation." Hallmark v. Jones, 207 Va. 968, 971, 154 S.E.2d 5, 7 (1967). "[A] case is moot when the issues presented are no longer 'live,'" Powell v. McCormack, 395 U.S. 486, 496 (1969), because "an actual controversy must be extant at all stages of review," to escape the notion that a case is moot. Preiser v. Newkirk, 422 U.S. 395, 401 (1975). "It is well settled that where there is no actual controversy, involving real and substantial rights, between the parties to the record, the case will be dismissed [as moot]." Thomas, Andrews & Co. v. Norton, 110 Va. 147, 148, 65 S.E. 466, 467 (1909). These principles exist because "'courts are not constituted . . . to render advisory opinions, to decide moot questions or to answer inquiries which are merely speculative.'" Commonwealth v. Harley, 256 Va. 216, 219-20, 504 S.E.2d 852, 854 (1998) (citation omitted). Moreover, even when the parties do not raise the issue of

mootness, appellate courts should raise the issue *sua sponte* when the record does not present a live case or controversy. Friedman's Inc. v. Dunlap, 290 F.3d 191, 197 (4th Cir. 2002).

During the conference in chambers, Baldwin's attorney explained the basis of Baldwin's objection and motion, which sought a re-sentencing "within the discretionary sentencing guidelines or . . . consider[ation] . . . for alternative sentencing." Baldwin's attorney also informed the trial judge he intended to present exhibits to demonstrate Baldwin's "sentence [was] . . . so disproportionate to any . . . sentence previously imposed under similar circumstances" that Baldwin was denied the opportunity to make an informed decision about his plea. It is important to note that during the chambers conference neither party adduced any evidence by way of testimony or exhibits. Based on Baldwin's attorney's representations, the trial judge denied the motion. Significantly, however, a month after this conference, the trial judge entered an order suspending imposition of the sentences on both the firearm and the narcotics convictions.

In pertinent part, Code § 19.2-303 provides as follows:

> If a person has been sentenced for a felony to the Department of Corrections but has not actually been transferred to a receiving unit of the Department, the court which heard the case, if it appears compatible with the public interest and there are circumstances in mitigation of the offense, may, at any time before the person is transferred to the Department, suspend or otherwise modify the unserved portion of such a sentence. The court may place the person on probation for such time as the court shall determine.

We have previously held that "Code § 19.2-303 is one of [the] exceptions [to Rule 1:1]."

Ziats v. Commonwealth, 42 Va. App. 133, 138, 590 S.E.2d 117, 120 (2003). This is so because,

> [b]y its express terms, Code § 19.2-303 permits the trial court, in cases where the defendant "has been sentenced for a felony to the Department of Corrections but has not actually been transferred to . . . the Department," to retain jurisdiction beyond the twenty-one-day limit of Rule 1:1 to "suspend or otherwise modify the unserved portion of such a sentence."

<u>Patterson v. Commonwealth</u>, 39 Va. App. 610, 617, 575 S.E.2d 583, 586 (2003).[1]  When the judge entered the order suspending imposition of the sentences, Baldwin was still in the local jail.

At the July 12, 2001 hearing, the colloquy between the trial judge and Baldwin's attorney established that the hearing was convened to consider Baldwin's motions and objections.  When the trial judge asked, "Are we here on a motion to reconsider sentencing?," Baldwin's attorney responded, "Yes, sir, and we had filed some objections to the earlier sentencing as well."  During the hearing, Baldwin's attorney argued that Baldwin did not have a long history of criminal violations and that most of Baldwin's violations were traffic related.  Asserting that the trial judge had speculated that Baldwin was dealing drugs "for quite some time," Baldwin's attorney argued that the record contained no evidence of years of drug dealing.  Baldwin's attorney also introduced as an exhibit documents concerning the trial judge's past sentencing decisions in drug cases and violent crimes cases, and he argued that the trial judge's deviation from the sentencing guidelines in Baldwin's case was uncharacteristic and deprived Baldwin of an adequate opportunity to decide whether to plead guilty.  Baldwin's attorney further argued that the long sentence was effectively a life sentence because of Baldwin's age.

Denying Baldwin's motions, the trial judge commented on his decision to impose the sentences, which levied an active term of seventeen years in prison.

> [T]his man from what I see in the pre-sentence report was a fifty-five
> year old who was in the business of distributing drugs in Tazewell
> County; an activity that is well publicized; and the harm of which is
> well publicized; and this man continued this activity in the face of all
> this adverse information.  If this sentence is an effective life sentence

---

[1] Baldwin cited no authority for the proposition he urges on appeal that the trial judge could not vacate and set aside the unserved portion of his sentence or otherwise modify the unserved portion of the sentence.  The Commonwealth conceded at oral argument that the language of Code § 19.2-303, which permits the trial judge to "otherwise modify the unserved portion of such a sentence," authorized the trial judge under the conditions specified in the statute to vacate, suspend, or otherwise modify the unserved portion of the sentence.

then so be it.  The sentence I imposed really didn't have a lot of consideration for rehabilitation because I felt that rehabilitation of this particular defendant would be very tenuous and the efforts wasted.  I'm going to deny the motion.

Simply put, the record is abundantly clear that the July 12, 2001 hearing encompassed all of the issues contained in Baldwin's motions, which challenged the trial judge's verbal rendition of the sentences and the written orders imposing the sentences.  Moreover, Baldwin was present at this hearing and given the opportunity to present evidence and to otherwise pursue his objection regarding the sentencing decision.  As a result of the hearing on July 12, 2001, Baldwin has suffered no harm, no loss of rights, and no impediment flowing from the judge's chambers conference with the attorneys.  Indeed, this evidentiary hearing effectively cured any impediments and violations that Baldwin contends he suffered as a result of the chambers conference.  Accordingly, we hold that Baldwin's challenge to the chambers conference raises issues of "abstract matters" that do not involve an "actual controvers[y] affecting [Baldwin's] rights," Jones, 207 Va. at 971, 154 S.E.2d at 7, and that, therefore, this issue is moot.[2]  Cf. Curtis v. Taylor, 625 F.2d 645, 647-49 (5th Cir.), modified and reh'g denied, 648 F.2d 946 (1980) (holding that a challenge to the adequacy of a statutorily required notice is mooted by the later issuance of a satisfactory notice).

### III.

Baldwin also contends that the trial judge violated his due process rights by failing to hear his objection and motion in a timely manner and by failing to preserve a record for appeal.

---

[2] Because we hold that the issue of Baldwin's presence at the chambers conference is moot, we need not decide whether the trial judge erred in refusing to hold the proceeding in open court and in Baldwin's presence.  See generally Sanders v. United States, 373 U.S. 1, 20-21 (1962) (holding that in considering a motion to modify a sentence, the sentencing judge has the discretion to determine whether a full evidentiary hearing is required and whether the defendant's presence is required); State v. Jennings, 729 P.2d 454, 456 (Kan. 1986) ("hold[ing] that a defendant has no right to a hearing on a motion to modify a sentence or to be present at consideration of that motion").

He argues that he was deprived of an appeal because the "July 12, 2001, hearing before the circuit court . . . was held after the sentencing orders became final and after [his] right to appeal the sentencing orders had elapsed."

Baldwin filed his objection and motion contesting the judge's oral pronouncement of sentences on April 30, 2001. The record reflects that the judge entered the sentencing order for the firearm conviction on May 24, 2001 and entered the sentencing order for the narcotics conviction on May 31, 2001. Baldwin timely filed notices of appeal from both conviction orders. He did not file within twenty-one days a motion to suspend, modify, or vacate the sentencing orders. See Berean Law Group, P.C. v. Cox, 259 Va. 622, 627, 528 S.E.2d 108, 111 (2000) (holding that "it was incumbent upon the [aggrieved party] to submit timely a written order to the circuit court suspending, modifying, or vacating" a final order in order for the trial judge to consider a matter filed within twenty-one days after the final order). Although Baldwin did file additional objections on May 31, 2001, none of his objections to the sentencing order and his motions for modification of his sentence sought to establish he was not guilty or to obtain the complete elimination of his sentences. Rather, he sought to have the trial judge "sentence [him] within the discretionary sentencing guidelines or to consider . . . alternative sentencing."

As we noted in Part II above, Baldwin had not been transferred to the Department on these felony convictions. Thus, when the trial judge entered the order staying and suspending imposition of the sentences, the trial judge had the authority under Code § 19.2-303 to grant all the relief Baldwin sought in his various objections and motions if the trial judge had found that the evidence warranted such relief. The record, therefore, establishes that Baldwin received a hearing in which he had the opportunity to present evidence in support of his post-sentencing motion and he had an adequate opportunity to preserve these issues for appeal. Accordingly, his claim that he was denied due process in the proceedings below lacks merit.

IV.

Baldwin further contends that the trial judge abused his discretion by failing to suspend a portion of Baldwin's sentence at the July 12, 2001 hearing. We hold that the record fails to show an abuse of discretion.

Code § 19.2-303 provides the trial judge with the discretion to "suspend or otherwise modify the unserved portion of [the] sentence." The trial judge convicted Baldwin upon his guilty pleas of shooting a firearm into an occupied home and of possessing cocaine with the intent to distribute. The evidence established that Baldwin had $9,400 worth of cocaine in several small baggies in his possession and that Baldwin confessed to dealing drugs for about a year. In reviewing whether the trial judge abused his exercise of discretion in sentencing a defendant, we do not substitute our judgment for that of the trial judge. Lane v. Commonwealth, 223 Va. 713, 719, 292 S.E.2d 358, 362 (1982). Our review of the record discloses that the trial judge's decision is adequately supported by the record. Accordingly, we hold that the judge did not abuse his discretion in refusing to suspend additional portions of Baldwin's prison sentence.

We, therefore, affirm the trial judge's ruling and the convictions.

Affirmed.