PRESENT:  All the Justices

THE DAILY PRESS, INC., ET AL.

v.   Record No. 120858

COMMONWEALTH OF VIRGINIA, ET AL.

OPINION BY
JUSTICE WILLIAM C. MIMS
February 28, 2013

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
H. Vincent Conway, Jr., Judge

This appeal involves a circuit court order sealing certain exhibits introduced during a criminal trial.  First, we consider whether this appeal is moot because the sealing order no longer is in effect and the exhibits now are available for public inspection.  Having concluded that it is not moot, we consider whether the sealing order violates constitutional and statutory guarantees of public access to criminal proceedings.

I.   BACKGROUND AND MATERIAL PROCEEDINGS BELOW

In August 2010, a grand jury in the City of Newport News indicted Lillian Callender and her boyfriend, Michael Stoffa, for felony child neglect of Callender's seventeen-month-old and twenty-seven-month-old daughters, and for second-degree murder of Callender's seventeen-month-old daughter.  Callender and Stoffa were tried separately.  Following bench trials on January 24 and May 26, 2011, respectively, Callender and Stoffa were found guilty of all three charges.

In the meantime, in March 2011, prior to Callender's sentencing and Stoffa's trial, Ashley Kelly, a reporter for The

Daily Press, Inc., requested permission of the clerk of the circuit court to review the file related to Callender's trial. Specifically, Kelly requested to review the trial exhibits, including photographs of and an autopsy report concerning the deceased child. The clerk denied this request and, on March 28, 2011, the circuit court entered an order sealing the entire Callender file from public inspection until the conclusion of Callender's and Stoffa's cases (the "March 28 order").

The Daily Press and Kelly (collectively, "Daily Press") filed a consolidated motion to intervene and motion for withdrawal of the sealing order. The circuit court granted the motion to intervene and rescinded the March 28 order, concluding that the order "was overbroad in sealing the entire file." However, the court expressed concern over protecting the rights of Stoffa and the Commonwealth in Stoffa's pending trial. Thus, it allowed the attorneys for Callender and the Commonwealth "to withdraw the original exhibits from the Callender file to be used in the trial of the co-defendant's [Stoffa's] case, said exhibits to be returned to the Callender file should an appeal be noted in her case (the "April 20 order")."[1] Daily Press requested that photocopies of the withdrawn exhibits remain in the public file, but the court instead directed that photocopies of the original exhibits be

---

[1] Callender filed an appeal in July 2011.

2

placed in the file under seal.  The court subsequently ordered that the original exhibits be returned to the public file at the conclusion of Stoffa's trial (the "April 22 order").

Daily Press petitioned the Court of Appeals for a writ of mandamus directing the circuit court to vacate the April 22 order.  It argued that the April 22 order was contrary to the constitutional and statutory protections affording public access to criminal proceedings and was not the least restrictive alternative available to the court.  The Court of Appeals denied the mandamus petition and, in light of that ruling, Daily Press filed a petition for appeal with the Court of Appeals.  The Court of Appeals granted that petition, but subsequently held that it did not have jurisdiction to hear appeals from sealing orders.  Daily Press, Inc. v. Commonwealth, 60 Va. App. 213, 222-23, 725 S.E.2d 737, 741-42 (2012).  It transferred the appeal to this Court pursuant to Code § 8.01-677.1.  Id.  We awarded Daily Press this appeal.

## II.  THE MOOTNESS ISSUE

The April 22 order expired by its own terms at the conclusion of Stoffa's trial.[2]  Furthermore, when Callender

---

[2] Stoffa's trial concluded in May 2011.  The Court of Appeals denied Stoffa's petition for appeal in April 2012, and this Court refused Stoffa's second-tier petition for appeal in August 2012.  Thus, even if the "conclusion" of Stoffa's criminal trial included any direct appeals in addition to the circuit court prosecution, that case has concluded.

appealed her convictions in July 2011, the original exhibits were returned to the public file and sent to the Court of Appeals. Thus, Daily Press now has been able to review the exhibits. Consequently, the Commonwealth argues that the case is moot.

Generally, a case is moot and must be dismissed when the controversy that existed between litigants has ceased to exist:

> Whenever it appears or is made to appear that there is no actual controversy between the litigants, or that, if it once existed, it has ceased to do so, it is the duty of every judicial tribunal not to proceed to the formal determination of the apparent controversy, but to dismiss the case. It is not the office of courts to give opinions on abstract propositions of law . . . . Only real controversies and existing rights are entitled to invoke the exercise of their powers.

E.C. v. Va. Dep't of Juvenile Justice, 283 Va. 522, 530, 722 S.E.2d 827, 831 (2012) (quoting Franklin v. Peers, 95 Va. 602, 603, 29 S.E. 321, 321 (1898)). However, the Supreme Court of the United States has recognized that the mootness doctrine may be inapplicable when a proceeding is short-lived by nature. See, e.g., Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 563 (1980); Gannett Co. v. DePasquale, 443 U.S. 368, 377 (1979); Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 546-47 (1976). "If the underlying dispute is capable of repetition, yet evading review, it is not moot." Richmond Newspapers,

4

Inc., 448 U.S. at 563 (internal quotation marks and citation omitted).

The Commonwealth argues that this exception to the mootness doctrine should be applied sparingly.  See Virginia Dep't of State Police v. Elliott, 48 Va. App. 551, 554, 633 S.E.2d 203, 204-05 (2006).  We agree.  But the controversy between the parties in this case fits squarely within the exception.

First, Daily Press, as the publisher of a daily newspaper that routinely covers cases in the Hampton Roads area, will be subjected to similar sealing orders.  See Gannett Co., 443 U.S. at 377-78.  The April 22 order itself reflected the circuit court's routine administrative process.  The trial judge, noting that he was "the Chief Judge for this circuit," stated, "The [c]ourt is familiar with many cases in which the Commonwealth has [moved] to withdraw original exhibits until all defendants have been prosecuted, and the [c]ourt has frequently granted that motion."  (Emphasis added.)  "[T]he [c]ourt has often administratively allowed [evidence admitted in the trial of a defendant], upon proper documentation, to be withdrawn" until subsequent prosecutions of related defendants are completed.  The trial judge also referred to "secur[ing] the withdrawal of any exhibits by the means customarily used."

5

(Emphasis added.)  These statements leave no doubt that this controversy is capable of repetition.

Second, if we decline to address the issues in this case on grounds of mootness, the dispute clearly will evade review. The April 22 order is "by nature short-lived."  See Nebraska Press Ass'n, 427 U.S. at 547.  By its express terms, the order expired at the conclusion of Stoffa's trial.  The Commonwealth argues that there was ample time to review the order before the end of Stoffa's trial.  We disagree.  Criminal trials are typically of short duration and, as in this case, sealing orders will frequently be lifted before our appellate review is completed.[3]

More importantly, the Commonwealth's argument ignores the contemporaneous need of a daily newspaper for access to criminal proceedings.  See Gannett Co., 443 U.S. at 380.  The benefits of public access to criminal proceedings have been recognized since before the Magna Carta.  Such access ensures that proceedings are conducted fairly, discourages perjury, safeguards against secret bias or partiality, and imparts legitimacy to the decisions of our judiciary.[4]  See Richmond

---

[3] The fact that Daily Press was unable to obtain expedited review of the April 22 order through a writ of mandamus underscores the evasive nature of the present dispute.

[4] Significant societal value has also been recognized from public access to criminal proceedings:  when a shocking crime occurs, a community reaction of outrage typically follows, and

6

Newspapers, Inc., 448 U.S. at 569-70.  Yet, to work effectively, public access must be contemporaneous – the public must be able to scrutinize the judicial process as it takes place.  Newspapers, such as Daily Press, serve as "surrogates for the public."  Id. at 573.  They are "the first rough draft of history,"[5] providing immediate descriptions of events as they unfold.  However, the newsworthiness of a particular story is often fleeting.  To delay or postpone disclosure undermines the benefits of public scrutiny and may have the same result as complete suppression.

In this case, Daily Press was prohibited from accessing the exhibits from March until July 2011, when Callender appealed her convictions and the exhibits were returned to the public file.  Unlike in Commonwealth v. Harley, 256 Va. 216, 504 S.E.2d 852 (1998) and Baldwin v. Commonwealth, 43 Va. App. 415, 598 S.E.2d 754 (2004), where the issues on appeal were moot because the appellants suffered no harm, Daily Press was harmed at the time its access was restricted.  Neither the expiration of the sealing order nor the later availability of the exhibits cured this deprivation of the right to

---

thereafter the open process of justice serves an important prophylactic purpose, providing an outlet for community concern and emotion.  See Richmond Newspapers, Inc., 448 U.S. at 570-71.

[5] Alan Barth popularized this phrase as an editorial writer for the Washington Post in the 1940s.

contemporaneously review the files.  The Commonwealth cannot

use the mootness doctrine to sidestep this deprivation.  If

every appeal of a sealing order were moot upon the expiration

of the order, the right to contemporaneous review would have no

value, causing irreparable injury to the public's interest in

open trials.  We therefore conclude that the controversy before

us is not moot.  We now turn to the merits.[6]

### III. THE MERITS

Daily Press argues that the April 22 order violated its

constitutional and statutory right of access to criminal

proceedings.  We agree.

### A. CONSTITUTIONAL RIGHT OF ACCESS

The public's constitutional right of access to criminal

proceedings and records is well-established.  The Supreme Court

of the United States has held that "the right to attend

criminal trials is implicit in the guarantees of the First

Amendment."[7]  Richmond Newspapers, Inc., 448 U.S. at 580.  This

---

[6] The Commonwealth now concedes that the sealing order was erroneous.  However, we do not allow parties to define Virginia law by their concessions.  See Tuggle v. Commonwealth, 230 Va. 99, 111 n.5, 334 S.E.2d 838, 846 n.5 (1985); Logan v. Commonwealth, 47 Va. App. 168, 172, 622 S.E.2d 771, 773 (2005) (en banc) ("Our fidelity to the uniform application of law precludes us from accepting concessions of law made on appeal.").  Consequently, we will consider the merits.

[7] Daily Press asserts that it has a constitutional right of access under the First Amendment of the Constitution of the United States and Article I, § 12 of the Constitution of Virginia.  These provisions are virtually identical.  See,

8

constitutional right of access extends to the inspection of documents filed in such proceedings. <u>Globe Newspaper Co. v. Commonwealth</u>, 264 Va. 622, 628, 570 S.E.2d 809, 812 (2002).

Although the right of access to criminal proceedings is of constitutional stature, it is not absolute. <u>See</u> <u>Nebraska Press Ass'n</u>, 427 U.S. at 570. However, the circumstances in which criminal trial exhibits can be sealed are limited. The public's right of access can only be denied upon a strong showing of a compelling governmental interest, and any closure must be narrowly tailored to serve that interest. <u>Globe Newspaper Co. v. Superior Court</u>, 457 U.S. 596, 606-07 (1982).

The governmental interest asserted here as the basis for the sealing order was Stoffa's Sixth Amendment right to a fair trial. In assessing whether closure is appropriate, there is a presumption in favor of openness. <u>Richmond Newspapers, Inc.</u>, 448 U.S. at 573. This presumption can only be overcome if specific findings are made that: (1) there is a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity and that closure would prevent that

_____

e.g., <u>Black v. Commonwealth</u>, 262 Va. 764, 785, 553 S.E.2d 738, 750 (2001) (Hassell, C.J., dissenting) (observing that "[t]he freedom of speech guaranteed by Article I, § 12 of the Constitution of Virginia is co-extensive with the protections guaranteed by the First Amendment of the Constitution of the United States"), *aff'd in part, vacated in part, and remanded*, 538 U.S. 343 (2003). Thus, for purposes of this opinion, we make no distinction between them.

prejudice; and (2) reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights. Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 14 (1986). To ensure stringent safeguarding of the constitutional rights at stake, courts are required to justify any decision to close with specific reasons and findings on the record. Id. at 13. We will review such findings de novo. In re Charlotte Observer, 882 F.2d 850, 853 (4th Cir. 1989).

In this case, the circuit court failed to make specific findings necessary to justify the sealing order. The court's rationale for sealing the exhibits was the possibility that they might be used in Stoffa's impending trial. The court expressed concerns over (1) potential prejudice from publication of the information contained in the exhibits; and (2) physical damage to the original exhibits that could affect their admissibility in Stoffa's trial. These rationales were speculative and not supported by particularized factual findings.

First, there was no evidence that publication of the information contained in the exhibits would prejudice Stoffa's right to a fair trial, or that sealing the exhibits would prevent any such prejudice. At the time of the March 28 and April 22 orders, Stoffa was scheduled to be tried without a jury, which made concerns over tainting the jury pool

10

irrelevant.[8]  Furthermore, while protecting the original exhibits from damage was a valid concern, the April 22 order was not the least restrictive means to satisfy it.  The court could have protected the rights of Stoffa and the Commonwealth, while also protecting the public's right of access, by allowing the original exhibits to be withdrawn but requiring photocopies of the exhibits to remain in the public file.

## B. CODE § 17.1-208

Daily Press also argues that the April 22 order violated the statutory presumption of open court records.  Code § 17.1-208 explicitly states that any records and papers maintained by the clerk "shall be open to inspection by any person."  With respect to our analysis, Code § 17.1-208's statutory presumption of access is equivalent to the constitutional right of access.  Court documents can only be sealed on the basis of "an interest so compelling that it cannot be protected reasonably by some measure other than a protective order," and "any such order must be drafted in the manner least restrictive of the public's interest."  Shenandoah Publ'g House, Inc. v. Fanning, 235 Va. 253, 259, 368 S.E.2d 253, 256 (1988).

---

[8] Stoffa subsequently could have elected to be tried by a jury.  However, this possibility alone was not a sufficient rationale for sealing the exhibits.  The court could have considered concerns regarding a potential jury at a later date, through less restrictive alternatives such as extensive voir dire or jury instructions addressing prejudice.  See Press-Enterprise Co., 478 U.S. at 15.

11

For the same reasons that the April 22 order violated the Constitution of the United States and the Constitution of Virginia, it also violated Code § 17.1-208.  There was no showing of a compelling governmental interest that justified permitting the exhibits to be withdrawn from the Callender file and copies of those exhibits to be placed under seal.

## IV. CONCLUSION

Accordingly, we will vacate the order of the circuit court.

Vacated.