COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Malveaux and Senior Judge Frank

UNPUBLISHED

STACY L. GLASS

v.      Record No. 0593-20-4

CITY OF MANASSAS PARK
  DEPARTMENT OF SOCIAL SERVICES

MEMORANDUM OPINION*
PER CURIAM
MARCH 2, 2021

FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Tracy Calvin Hudson, Judge

(Robert R. Gregory, on briefs), for appellant.

(Martin R. Crim; Stephanie Stinson, Guardian *ad litem* for the minor
children; Vanderpool, Frostick & Nishanian, P.C.; Old Town
Advocates, P.C., on brief), for appellee.


Stacy L. Glass (mother) appeals the orders terminating her parental rights to her three

children. Mother argues that the circuit court erred in denying her motion for a continuance and her

motion for a transcript. Mother next argues that the circuit erred in finding that the conditions

which resulted in the neglect or abuse of the children were not substantially eliminated or corrected.

Mother also argues that the circuit court erred in finding that the City of Manassas Park Department

of Social Services (the Department) had provided sufficient services to assist her in overcoming the

issues that led to the removal of her children. Upon reviewing the record and briefs of the parties,

we conclude that this appeal is without merit. Accordingly, we summarily affirm the decision of the

circuit court. See Rule 5A:27.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cnty. Dep't of Hum. Servs., 63 Va. App. 157, 168 (2014)).

Mother is the biological mother to the three children who are the subject of this appeal, E.J.S., A.M.B., and Z.T.B., ages seventeen, nine, and six, respectively.[2] The Department had been involved with the family since 2015. The Department previously made a founded level three finding of physical neglect based on inadequate shelter, which was not appealed. In February 2017, mother requested assistance from the Department. The Department paid for mother's dental work, a bicycle, clothing and bedding, and a water bill. Mother was not receptive to the Department's other attempts to provide services including school transportation for the school-aged children, psychological evaluations for mother and E.J.S., housing, disability income, and employment.

On April 17, 2017 the Department received a report that mother's home was dirty, smelled of rotting food, had food and clothing all over, and had a broken front window with glass on the couch. The report also stated that mother had threatened and physically attacked Jeffrey Burke, the father of A.M.B. and Z.T.B. The Department conducted home visits on March 13 and April 17,

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] Michael Sanford is the biological father of E.J.S., and Jeffrey Burke is the biological father of A.M.B. and Z.T.B. The Prince William County Juvenile and Domestic Relations District Court terminated both Sanford and Burke's parental rights. Neither father appealed those decisions.

2017, and found hanging appliance cords within reach of the children, a broken window with sharp edges, rotten food on the floors and other surfaces accessible to the children, and objects that presented a choking or poison hazard within reach of the children. The Department petitioned for emergency removal of all three children, and they were placed in a foster home.

On June 1, 2017, the Prince William County Juvenile and Domestic Relations District Court (the JDR court) found that the children were abused or neglected. After a dispositional hearing, the JDR court approved initial foster care plans with the goal of returning all three children to mother's care. The Department required mother to take a parenting class, complete a psychological evaluation, complete a parental capacity evaluation, cooperate with all recommendations, and provide potential placement resources for the children. By October 2017, mother had completed her parenting class and psychological evaluation. Mother continued to reside in her home after the lease had terminated; her eviction was pending. Mother had no income or plan for alternative housing.

In January 2018, mother informed the Department that she intended to move to Florida to be near family and had a job and housing lined up. Mother informed the Department of at least two changes of address once in Florida. After mother moved to Florida, the Department filed petitions to terminate her rights to all three children in June 2018. The Department sought approval of mother's housing in Florida through the Interstate Compact on the Placement of Children (ICPC), but Florida denied the request for approval of her home in August 2018. At mother's request, the JDR court directed the Department to resubmit two more ICPC studies for approval of mother's home and both were ultimately denied in April 2019 and October 2019. Mother visited the children while she still lived in Virginia and maintained telephone contact with them after she moved to Florida.

Mother obtained a psychological evaluation as required by the Department. Dr. Edwin N. Carter performed the evaluation and prepared a report. Dr. Carter found that mother's cognition was highly suspect and inconsistent. Dr. Carter reported that mother is likely to unwittingly engage in negligent actions like failure to maintain a clean and healthy environment, follow through with doctor's instructions, and balance the needs of the children appropriately. Mother needed vocational training to take care of herself financially and required an extensive external structure that could likely never be eliminated. Dr. Carter found that mother appeared unable to manage the environment and general circumstances of children without support or direction. Dr. Carter believed that mother could participate in the parenting of her children only if they were in the custody of others.

Although mother participated in the psychological evaluation, she did not satisfy many other requirements of the foster care plan. Mother did not enlist the help of other competent individuals to help with the demands of raising the children, did not obtain safe and stable housing for the children, and did not obtain stable employment sufficient to pay for the family's household expenses.

On January 31, 2019, the JDR court orally approved a change of goal to adoption and indicated it would enter the termination of parental rights orders. On February 6, 2019, the JDR court *sua sponte* reconsidered its ruling. On September 26, 2019, the JDR court entered the orders approving the foster care goal of adoption and terminating the parental rights of mother for all three children. Mother appealed the JDR court's rulings to the circuit court.

On March 16, 2020, the parties appeared before the circuit court. Mother had not communicated with her counsel for three months, so her counsel moved for a continuance. The circuit court denied the motion. A social worker testified that mother did not follow up on any of the services before and after the children's removal unless her father was involved. The Department

presented evidence that the children had been removed on April 17, 2017 and had been thriving in their foster home since the removal. The children were medically healthy, had a healthy relationship with each other and their foster parents, were learning academically and socially, and participated in therapy.

Mother testified that she wished to be reunited with her children. Mother described her current living situation near relatives and testified that she worked twenty-eight to forty hours per week. Mother admitted to a prior conviction for a crime of moral turpitude. Mother also acknowledged that she did not have a budget, that she had not pursued job training or obtained her GED, and had not pursued a degree in nursing as she had previously promised. Mother could not explain why she had not visited the children in Virginia except when she came to Virginia for court appearances.

After hearing the evidence and argument, the circuit court found that mother "suffers from a mental deficiency of such severity that there's no reasonable expectation that she'll be able to undertake responsibility for the care needed for the children in accordance with their age and level of development." The circuit court also found that "the Department has provided every conceivable support mechanism to [mother], and [mother] without good cause has not responded to or followed through with the appropriate available and reasonable rehabilitative efforts that have been offered to her." The circuit court terminated mother's parental rights to the children under Code § 16.1-283(B) and (C)(2) and approved the foster care goal of adoption. This appeal followed.

ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cnty. Dep't of Fam. Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cnty. Dep't of Hum. Dev., 13 Va. App. 123, 128 (1991)). "Where, as

here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

Mother argues that the circuit court erred in denying her motion for a continuance, erred in denying her motion for a transcript at no cost to her, and erred in finding that the evidence was sufficient to support the termination of her parental rights. Mother asserts that the evidence showed that the conditions that resulted in the neglect or abuse were substantially eliminated or corrected, in order to allow the children to safely return to her care. Mother also asserts that the evidence was insufficient to show that the Department had provided sufficient services to assist her in overcoming the problems in her case.

Mother did not object to the denial of either motion and did not object to the Department's evidence. "The Court of Appeals will not consider an argument on appeal which was not presented to the trial court." Tackett v. Arlington Cnty. Dep't of Hum. Servs., 62 Va. App. 296, 315 (2013) (quoting Ohree v. Commonwealth, 26 Va. App. 299, 308 (1998)); see Rule 5A:18. "The purpose of Rule 5A:18 is 'to ensure that the trial court and opposing party are given the opportunity to intelligently address, examine, and resolve issues in the trial court, thus avoiding unnecessary appeals.'" Friedman v. Smith, 68 Va. App. 529, 544 (2018) (quoting Andrews v. Commonwealth, 37 Va. App. 479, 493 (2002)). Mother acknowledges that she did not preserve these objections and asks this Court to review her claim under the ends of justice exception to Rule 5A:18.

"The 'ends of justice' exception to Rule 5A:18 is 'narrow and is to be used sparingly.'" Pearce v. Commonwealth, 53 Va. App. 113, 123 (2008) (quoting Bazemore v. Commonwealth, 42 Va. App. 203, 219 (2004) (*en banc*)). Whether to apply the ends of justice exception involves

two questions: "(1) whether there is error as contended by the appellant; and (2) whether the failure to apply the ends of justice provision would result in a grave injustice." Commonwealth v. Bass, 292 Va. 19, 27 (2016) (quoting Gheorghiu v. Commonwealth, 280 Va. 678, 689 (2010)). "The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant." Holt v. Commonwealth, 66 Va. App. 199, 210 (2016) (*en banc*) (quoting Brittle v. Commonwealth, 54 Va. App. 505, 514 (2009)). "In order to avail oneself of the exception, a defendant must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage might have occurred." Melick v. Commonwealth, 69 Va. App. 122, 146 (2018) (quoting Redman v. Commonwealth, 25 Va. App. 215, 221 (1997)). Furthermore, to demonstrate that a miscarriage of justice has occurred, "[i]t is never enough for the defendant to merely assert a winning argument on the merits—for if that were enough[,] procedural default 'would never apply, except when it does not matter.'" Winslow v. Commonwealth, 62 Va. App. 539, 546 (2013) (quoting Alford v. Commonwealth, 56 Va. App. 706, 710 (2010)).

## I. Motion to Continue

Mother argues that the circuit court erred in denying her motion to continue. Mother asks us to invoke the ends of justice exception to Rule 5A:18 and reverse the circuit court's denial of her motion to continue. However, the record fails to affirmatively demonstrate a miscarriage of justice that would require reversal of the circuit court's decision. The joint statement of facts in lieu of a transcript indicates that mother's counsel moved for a continuance because he had not heard from mother in three months. Despite this lack of communication, mother was able to put forth her own evidence in the case. Nothing in the record indicates that mother was hindered or unprepared in her case because she had not spoken to her attorney in three months. Accordingly, we find no miscarriage of justice that would require reversal of the circuit court's decision.

## II. Motion for Transcript

Mother asks that we invoke the ends of justice exception to Rule 5A:18 and reverse the circuit court's denial of her request for a transcript at no cost to her. Under Rule 5A:8(c), a written statement of facts can be submitted in lieu of a transcript. In this case, the circuit court approved a statement of facts that summarized the evidence, procedural history, and trial proceedings. All parties, including mother, signed the joint statement of facts in lieu of a transcript. Mother's submission of a statement of facts renders her claim regarding the denial of a motion for a transcript moot. "[T]he general rule [is] that appellate courts do not sit to give opinions on moot questions or abstract matters, but only to decide actual controversies injuriously affecting the rights of some party to the litigation." Bristol Dep't of Soc. Servs. v. Welch, 64 Va. App. 34, 42 (2014) (quoting Baldwin v. Commonwealth, 43 Va. App. 415, 421 (2004)). "Where there is no actual controversy, the case will be dismissed as moot." Id. at 42-43. Accordingly, we do not address this assignment of error.

## III. Termination of Mother's Parental Rights

Mother asks us to invoke the ends of justice exception to Rule 5A:18 and reverse the circuit court's termination of her parental rights to E.J.S., A.M.B., and Z.T.B. However, the record fails to affirmatively demonstrate a miscarriage of justice that would require reversal of the circuit court's order terminating mother's parental rights.

The circuit court terminated mother's parental rights under Code § 16.1-283(B) and (C)(2). Code § 16.1-283(B) states a parent's parental rights may be terminated if:

> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and
>
> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate

- 8 -

the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

Furthermore, the following is *prima facie* evidence for Code § 16.1-283(B)(2):

a. The parent or parents have a mental or emotional illness or intellectual disability of such severity that there is no reasonable expectation that such parent will be able to undertake responsibility for the care needed by the child in accordance with his age and stage of development;

b. The parent or parents have habitually abused or are addicted to intoxicating liquors, narcotics or other dangerous drugs to the extent that proper parental ability has been seriously impaired and the parent, without good cause, has not responded to or followed through with recommended and available treatment which could have improved the capacity for adequate parental functioning; or

c. The parent or parents, without good cause, have not responded to or followed through with appropriate, available and reasonable rehabilitative efforts on the part of social, medical, mental health or other rehabilitative agencies designed to reduce, eliminate or prevent the neglect or abuse of the child.

"[S]ubsection B [of Code § 16.1-283] 'speaks prospectively' and requires the circuit court to make a judgment call on the parent's ability, following a finding of neglect or abuse, to substantially remedy the underlying problems." Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 270-71 (2005) (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63 (2003)). "Virginia's jurisprudence recognizes that 'past actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold.'" Farrell v. Warren Cnty. Dep't of Soc. Servs., 59 Va. App. 375, 425 (2012) (quoting Winfield v. Urquhart, 25 Va. App. 688, 695-96 (1997)); see also Geouge v. Traylor, 68 Va. App. 343, 375 (2017).

The evidence reflected in the record on appeal was clearly sufficient for the circuit court to terminate mother's parental rights to all three children. The circuit court found that the children's living conditions were deplorable and could not verbally describe what some of the exhibits

showed. The evidence showed that mother suffered from such a severe mental deficiency that she could only participate in the parenting of her children if they were in the custody of others. This structure of parenting while the children were in the custody of others could be reduced, but likely never eliminated. The circuit court stated that the children needed stability, nurturing, and parent figures who can meet their physical, emotional, and developmental needs, and mother could not provide any of that.

Furthermore, "Code § 16.1-283(B) requires only that the circuit court consider whether rehabilitation services, if any, have been provided to a parent. Nothing in Code § 16.1-283 or the larger statutory scheme requires that such services be provided in all cases as a prerequisite to termination under subsection B." Toms, 46 Va. App. at 268. The Department previously had provided services to mother, which she either declined or failed to follow up on. Contrary to mother's arguments, the circuit court did consider whether services had been provided and found that the Department had provided "every conceivable support mechanism" to mother and she failed to follow through.

The children thrived in their foster home. The children were medically healthy, had healthy relationships with each other and their foster parents, and were learning academically and socially. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett, 62 Va. App. at 322 (quoting Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)).

Considering the totality of the record, we find no miscarriage of justice that would require reversal of the circuit court's decision.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed.  Rule 5A:27.

<u>Affirmed.</u>