COURT OF APPEALS OF VIRGINIA

Present:   Judges Malveaux, Fulton and Friedman
Argued by videoconference


STEVEN CHRISTOPHER COSBY-MOORE

MEMORANDUM OPINION* BY
v.        Record No. 1342-21-1        JUDGE JUNIUS P. FULTON, III
                                      OCTOBER 4, 2022
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Leslie L. Lilley, Judge
James C. Lewis, Judge

Taite A. Westendorf (Westendorf & Khalaf, PLLC, on brief), for
appellant.

Mason D. Williams, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


The trial court convicted Cosby-Moore of robbery, malicious wounding, and the use of a

firearm in the commission of a felony.  Based on those convictions, the trial court also found that he

had violated the conditions of his previously suspended sentence.  Cosby-Moore argues that the trial

court violated his due process rights when it improperly convicted him of robbery, malicious

wounding, and the use of a firearm in the commission of a felony.  He also argues that the trial court

erred in finding him in violation of his probation and imposing an active four-year sentence based

upon the improper convictions.  For the following reasons, we affirm the trial court's judgment.

## BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial." *Poole v.*

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

*Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). In doing so, we discard all of Cosby-Moore's conflicting evidence and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. *Gerald*, 295 Va. at 473.

On October 29, 2019, Gerard Betancourt was a passenger in a Nissan SUV with four other people who were "riding around" Virginia Beach and Norfolk. The only other occupants of the vehicle known to Betancourt were his roommate, C.J., and the driver, Cosby-Moore. The other two occupants were an unidentified female sitting in the front passenger seat and a man named Seacrist, who was seated in the backseat with Betancourt and C.J. After stopping at a Walmart, Betancourt used the restroom, bought a drink, and then returned to the car. They left Walmart around 1:00 a.m. and drove to various locations around Virginia Beach and Norfolk while the occupants used drugs. Betancourt denied consuming any drugs or knowing what drugs his companions were using but admitted that he had used drugs the previous day.

Eventually, after a dispute developed in the vehicle, Cosby-Moore stopped the Nissan behind a Goodwill thrift store, exited the car, opened Betancourt's door, and told him to get out. Betancourt tried to take his bag that contained paperwork, but the group would not allow him. Cosby-Moore then placed a gun against Betancourt's head and demanded that he strip naked and relinquish everything he had. He told C.J. to search Betancourt's belongings, and they took his money, phone, and wallet. C.J. removed money from Betancourt's wallet. Eventually, only Betancourt's wallet, credit cards, shirt, and phone were returned to him. The group kept the cash taken from inside of Betancourt's wallet, as well as Betancourt's pants and his bag with his paperwork in it. Before driving away and leaving Betancourt behind, Cosby-Moore stabbed Betancourt in the chest and left hand.

Betancourt, who was "bleeding all over the place," found a plastic bag in a dumpster, wrapped it around himself, and walked to a nearby 7-Eleven store. Betancourt asked the clerk if he could use the phone or a phone charger because his phone died; the clerk allowed him to charge his phone. While waiting at the 7-Eleven for approximately two hours, Betancourt reached his friend, Ken Pugh, and asked Pugh to take him to the hospital. Betancourt felt like he was going to pass out and die. When Pugh arrived at the 7-Eleven, he called 911. Betancourt testified that he did not call 911 because he was afraid that Cosby-Moore would kill him.

Virginia Beach Police Officer Aguirre responded to the 7-Eleven and saw Betancourt inside, bleeding with a laceration to his chest. Officer Aguirre believed Betancourt was "out of it" and could have been intoxicated or experienced blood loss. Police found a blood trail from behind the Goodwill that led to the 7-Eleven. The keys found with Cosby-Moore during his arrest belonged to a car that matched Betancourt's description. Betancourt's bag of personal items and documents were later found in Seacrist's home.

In a motion to strike the Commonwealth's evidence, Cosby-Moore argued that the Commonwealth failed to prove all the elements of robbery because he lacked the intent to steal. Notably, he did not argue that the evidence was insufficient to sustain the malicious wounding charge during the motion to strike. The trial court denied the motion. Cosby-Moore declined to present evidence and renewed his motion to strike, arguing that Betancourt was an unreliable, inconsistent witness.

After argument, the trial court explained its decision as follows:

> [I]t seems that on almost every case that's tried these days, drugs
> are at the center of them somehow, and the stories that come out of
> those cases are curiouser and curiouser to use the phrase out of
> some literature. When I look at the evidence that the
> Commonwealth has presented here first and I look at the defense
> side of the case, Mr. Betancourt has not told the court everything
> that happened that night. It's clear he's not told the court
> everything that's happened. I mean, why are you cut that severely

with no clothes standing outside of a 7-Eleven for two hours
without calling the police? . . . I mean, it is just craziness that
someone with that bad of a wound stands outside for two hours and
nobody calls the police. I can't even believe the 7-Eleven clerk
would go out and help him frankly. It seems common sense that
she would have called the police immediately. I don't understand
that. Something happened in the car, and I don't believe
Mr. Betancourt didn't know who was using drugs and what kind of
drugs they were using. Here's a guy that's got a platinum credit
card as part of the evidence put in here. He's not a street person
who doesn't have some means about him. . . .

It troubles the judge when he doesn't understand what
happened because I'm being asked to find someone guilty beyond
a reasonable doubt of a crime, three very serious crimes, and yet I
don't know all the facts. . . . I don't hear from any of the witnesses
in the car. I don't hear from C.J. I don't hear from Seacrist. . . .
[S]o those are the concerns that I have looking at the case, that
there is so much left that I don't know in a case that I should know.
I should know these things, and I don't.

The trial court further noted that while there were gaps in the evidence and missing

witnesses, it was "left to presume that the Commonwealth in this matter, as in every case when a

lawyer puts a witness on the stand, vouches for the credibility of their witness." The trial court

concluded its statement and found that "there are certain crimes that occurred, and the evidence that

[the trial court had] of those crimes [is] the testimony of Mr. Betancourt unrebutted." And further,

that portions of his testimony were corroborated by the physical evidence, including his stab

wounds and "blood trail." Accordingly, the trial court denied the renewed motion and convicted

Cosby-Moore of robbery, malicious wounding, and use of a firearm in the commission of a felony.

This appeal followed.

ANALYSIS

I. Cosby-Moore's Due Process Arguments Are Not Preserved

Cosby-Moore argues that the trial court violated his due process rights because, despite finding that Betancourt was an incredible witness,[1] it "presume[d]" that the Commonwealth vouched for his credibility. He contends that well-settled case law establishes that it is "improper for the Government to vouch for the credibility of a witness." He also argues that by emphasizing that certain portions of Betancourt's testimony were "unrebutted," the trial court improperly shifted the burden of proof to require him to rebut the Commonwealth's evidence. However, he has failed to preserve these arguments for appellate review.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "In order to preserve an issue for appeal, 'an objection must be timely made and the grounds stated with specificity.'" *McDuffie v. Commonwealth*, 49 Va. App. 170, 177 (2006) (quoting *Marlowe v. Commonwealth*, 2 Va. App. 619, 621 (1986)). "Specificity and timeliness undergird the contemporaneous-objection rule [and] animate its highly practical purpose." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019); *Brown v. Commonwealth*, 279 Va. 210, 217 (2010). "Not just any objection will do. It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it." *Bethea*, 297 Va. at 743 (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)).

Cosby-Moore's due process arguments were not presented to the trial court. His only arguments during the motions to strike and closing argument were limited to the robbery charge and

---

[1] Cosby-Moore's assertion that the trial court found Betancourt "incredible" is not supported by the record.

- 5 -

that Betancourt was an incredible and unreliable witness. Then, after the trial court stated its ruling, Cosby-Moore's trial counsel responded, "[a]nd Judge, if you could just note our objection to those findings, Judge, based on the totality of the circumstances and the evidence presented." Although the trial court's remarks regarding the Commonwealth vouching for Betancourt's credibility were made after the motions to strike, while pronouncing its verdict, Cosby-Moore presented no further argument, nor did he ask the court to set aside its verdict. The necessity of a timely and specific objection is highlighted by the circumstances of this case and is not lessened by the fact that the perceived objectionable nature of the rationale of the trial court's judgment may not have been evident until the trial court delivered its ruling.

Thus, while he had the opportunity, Cosby-Moore did not apprise the trial court that he was asserting that his due process rights were violated or that the court had shifted the burden of proof to him.[2] *Bethea*, 297 Va. at 743. Cosby-Moore does not invoke the good cause or ends of justice exceptions to Rule 5A:18, and the Court will not apply the exceptions *sua sponte*. *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (*en banc*). Thus, Rule 5A:18 bars our consideration of this assignment of error on appeal.

---

[2] From a review of the record, it is does not appear that the trial court did, in fact, assign added value or weight to Betancourt's testimony, or shift the burden of proof to Cosby-Moore. The Commonwealth argues in its brief that the trial court's statement regarding the Commonwealth vouching for Betancourt's credibility was simply "inartfully phrased, merely observed several principles of general trial practice," and was taken out of context. *See Yarborough v. Commonwealth*, 217 Va. 971, 978 (1977) ("[W]e will not fix upon isolated statements of the trial judge taken out of the full context in which they were made, and use them as a predicate for holding the law has been misapplied."). The trial court is presumed to have correctly applied the law to the facts. *Id.* Further, the Commonwealth argues that "[t]he trial court's statements in its closing [monologue] that portions of Betancourt's testimony were 'unrebutted' were factually accurate and did not shift the burden of proof onto the defendant, but merely noted that there was no evidence countering Betancourt's testimony." Had Cosby-Moore made a specific and timely objection to the trial court's ruling, the trial court may very well have clarified the meaning of its remarks. This lack of clarity in the record is the very reason Rule 5A:18 exists; to ensure that the trial court "know[s] the particular point being made in time to do something about it." *Bethea*, 297 Va. at 743 (quoting *Dickerson*, 58 Va. App. at 356).

## II. Cosby-Moore's Probation Violation

Cosby-Moore argues that if his underlying convictions are reversed, the probation violation must also be reversed and dismissed because it was based on those convictions. "[A]ppellate courts do not sit to give opinions on moot questions or abstract matters, but only to decide actual controversies injuriously affecting the rights of some party to the litigation." *Bristol Dep't of Soc. Servs. v. Welch*, 64 Va. App. 34, 42 (2014) (quoting *Baldwin v. Commonwealth*, 43 Va. App. 415, 421 (2004)). As we have affirmed his convictions for robbery, malicious wounding, and the use of a firearm in the commission of a felony, this revocation argument is moot. *See Patterson v. Commonwealth*, 12 Va. App. 1046, 1049 (1991) ("Where the criminal conviction underlying the revocation is affirmed on appeal, the appeal is considered without merit or is considered moot." (first citing *Roberts v. State*, 246 S.E.2d 435, 436 (Ga. Ct. App. 1978); then citing *Manos v. State*, 489 P.2d 787, 787 (Okla. Crim. App. 1971))).

## CONCLUSION

Accordingly, the trial court's judgment is affirmed.

*Affirmed.*